DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Sandusky County Court of Common Pleas where, following a bench trial, the court found appellant Charles Akers guilty of sexual battery in violation of R.C.2907.03(A)(5), pandering sexually oriented matter involving a minor in violation of R.C. 2907.322, and extortion in violation of R.C.2905.11(A)(5). For the reasons that follow, we find that the decision of the trial court must be affirmed.
This case stems from a videotape appellant made in August or September 1997 of his then-wife, Victoria Akers, engaging in some form of sexual activity with their minor daughter. (The precise statutory characterization of this sexual activity is at issue in this appeal.) Appellant's and Victoria Akers' testimony regarding the circumstances surrounding the making of this video are wholly inconsistent. Victoria Akers, while admitting that both she and appellant were involved in drugs, testified that appellant, at various times in their marriage, kept her heavily drugged so that she was unable at times to remember certain events that she had engaged in. Ms. Akers' explanation for the video was that appellant drugged her and she had no recollection of the videotaped sexual activity with her daughter. Appellant, on the other hand, testified that he surreptitiously made the videotape while hiding in the bedroom closet as a means to gain evidence to convince or force Ms. Akers into counseling to address drug abuse and alleged sexual improprieties with their daughter. Appellant testified that, as he had wished, Victoria Akers attended counseling and took her prescription medication properly, so he did nothing with the video for approximately one and one-half years.
In late January 1999, appellant was arrested and jailed for forging prescription drugs. Admitted into evidence is a letter appellant sent Ms. Akers on or about February 17, 1999, demanding that she get him out of jail. Appellant stated in the letter that he had already sent a letter to the couple's children telling them that the family's problems were one-half their mother's fault and that he had sent a letter to Ms. Akers' doctor reporting Ms. Akers' alleged alteration of prescriptions. The letter then explained that if Ms. Akers did not get him out of jail, appellant would send out three more letters. One letter would go to the principals of their two children's schools telling the principals about Ms. Akers' alleged sexual molestation of both children and telling the principals where to find a videotape of Ms. Akers molesting the children and engaging in sexual acts with a dog. The second letter would go to the Bellevue Police Department and would expose Ms. Akers' and her parents' alleged illegal use of prescriptions and prescription drugs. The third letter would go to the Sandusky Register exposing the above-described molestation and illegal drug use. After outlining the three letters he would send if Ms. Akers did not get appellant out of jail, appellant stated in the letter, "If you don't think I will do it just remember I have nothing to lose!!!! I will f___ up your job, your Dad's reputation and you will be in jail for Rx's and child molestation for which there is no bail." The letter closes by saying, "If you think I'm kidding check with Dr. Fox today or tomorrow and you will see that I[']m not. Now get me the f___ out of here or the letters go out Sat[u]rday nite. No bullshit."
Victoria Akers did not help appellant get out of jail. She testified that she saw appellant's incarceration as a chance to get herself and her children away from him, and she had in fact moved to a different house while appellant was in jail. Appellant was successful in getting out of jail on his own a short time later, and he found out where Ms. Akers and the children were living. Victoria Akers testified that appellant harassed her on several occasions and she obtained a restraining order against him. He also threatened, during this time, to use the videotape in question against her.
Appellant testified that on or about February 25, 1999, he showed the videotape in question to a friend, Harry Woods, to prove to Woods that Victoria Akers was lying to Woods about certain events. Appellant testified that Woods told appellant to go to an attorney with the tape, and Woods in fact drove appellant to see an attorney in Sandusky the following day. According to appellant, the attorney advised him to take the tape to the police, and on February 27, 1999, appellant did so. At that point, the police went to Victoria Akers' home and removed her children, and legal proceedings against both of the Akers soon followed.
On or about April 23, 1999, appellant was indicted in a four count indictment. Count 1 alleged that appellant aided and abetted rape in violation of R.C. 2907.02(A)(1)(a), and it included a specification that appellant is a sexually violent predator. Count 2 alleged that appellant aided and abetted sexual battery in violation of R.C. 2907.03(A)(5), and it included a specification that appellant is a sexually violent predator. Count 3 alleged that appellant engaged in pandering sexual oriented matter involving a minor in violation of R.C.2907.322, and it included a specification that appellant is a sexually violent predator. Finally, Count 4 alleged that appellant committed extortion in violation of R.C. 2905.11(A)(5).
Following a bench trial, the trial court found appellant not guilty as to Count 1, rape, but guilty as to the remaining counts. The trial court found appellant to be a sexual predator but not a sexually violent predator. The trial court sentenced appellant to a term of five years on Count 2, sexual battery, and eight years on Count 3, pandering sexually oriented matter involving a minor, to be served concurrently. The trial court also sentenced appellant to a term of five years on Count 4, extortion, to be served consecutive to the other two terms.
Appellant appeals the trial court's judgment, setting forth the following assignments of error:
 "1. The Trial Court erred to the prejudice of Appellant when it found him guilty of Extortion since there was insufficient evidence to support a conviction, and since the conviction was against the manifest weight of the evidence.
 "2. The Trial Court erred to the prejudice of Appellant when it found him guilty of Sexual Battery since there was insufficient evidence to support a conviction, and since the conviction was against the manifest weight of the evidence.
 "3. The Trial Court erred to the prejudice of Appellant and abused its discretion by sentencing him to the maximum term when it failed to make a determination, on the record, pursuant to R.C. 2929.14(C) that Appellant committed the worst forms of the offense or that he poses the greatest likelihood of committing future crimes, thus he may appeal said sentences a matter of right under R.C. 2953.08(A)(1)(b)."
In his first two assignments of error, appellant contends that there was not sufficient evidence to support convictions for sexual battery and extortion and that these convictions were against the manifest weight of the evidence. "Weight of the evidence" and "sufficiency of the evidence" are two distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, reconsideration denied (1997), 78 Ohio St.3d 1451. "Sufficiency of the evidence" is a legal standard that the court applies to determine if a case should go to a jury or to determine whether there is sufficient evidence to support a verdict. Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. According to the Supreme Court of Ohio, "sufficiency is a test of adequacy." Thompkins,78 Ohio St.3d at 386. In contrast, "weight of the evidence" refers to the jury's resolution of conflicting testimony. Id. at 387. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. Keeping these principles in mind, we turn to the first two assignments of error.
Appellant contends in his first assignment of error that he cannot be convicted of extortion because he did not obtain or seek to obtain a "valuable thing or benefit." R.C.2905.11(A)(5), which prohibits extortion, provides, in pertinent part:
 "(A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:
"* * *.
 "(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.
"* * *."
The state contends that the valuable thing or valuable benefit that appellant sought to obtain from Victoria Akers was freedom from jail. If he did not receive this benefit, according to the state, he threatened to expose Victoria Akers' alleged sexual molestation of the children, a matter "tending to subject [a] person to hatred, contempt, or ridicule," and a matter tending to damage one's reputation. See R.C. 2905.11(A)(5). Appellant, on the other hand, contends that freedom from jail is not a "valuable thing or benefit" because it does not have monetary value. Appellant relies on State v. Stone (Mar. 26, 1992), Washington App. No. 90 CA 23, unreported, and this court's decision in State v. Evans (May 28, 1999), Sandusky App. No. S-98-035, unreported, to support his contention. In both of these cases, the courts, not having found a definition of "valuable thing or benefit" in the extortion statute, rely on the definition of "anything of value" in R.C. 1.03, the general definitional section applicable to the entire Revised Code. To the extent that these cases were attempting to define a "valuablething" (emphasis added) or "anything of value," (emphasis added), they are inapplicable. Here, the assistance that appellant sought from Victoria Akers was clearly a "benefit," not a "thing." Therefore, it is necessary to define the term "valuable benefit" in the context of the extortion statute.
R.C. 1.42 provides that words and phrases are to be construed according to the rules of grammar and common usage unless they have acquired a special statutory meaning. That section provides:
 "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."
Since the term "valuable benefit" has not been statutorily defined, it is necessary to construe it in accordance with its ordinary meaning and common usage. "Valuable" is defined in Webster's Dictionary as "having monetary value," "worth a good price," "having desirable or esteemed characteristics or qualities," and "of great use or service." Webster's Ninth New Collegiate Dictionary (1990) 1302. "Benefit" is defined as "an act of kindness," "something that promotes well-being," "useful aid," "financial help in time of sickness, old age, or unemployment," "a payment or service provided for under an annuity, pension plan, or insurance policy," and "an entertainment or social event to raise funds for a person or cause." Id. at 144.
Bearing these definitions in mind, we find that demanding freedom from jail is a valuable benefit within the context of its ordinary meaning, and we find that the conviction on the extortion charge was based on sufficient evidence and was not against the manifest weight of the evidence. Therefore, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant challenges his conviction for aiding and abetting sexual battery on the grounds of sufficiency of the evidence and weight of the evidence. According to appellant, the sexual activity shown on the videotape is not the type of sexual conduct prohibited by the statute. R.C.2907.03(A)(5) provides:
 "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
"* * *.
 "(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."
"Sexual conduct," as used in R.C. 2907.03(A), is defined in R.C.2907.01(A). That section provides:
 "(A) `Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vagina or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
Finally, R.C. 2923.03, the complicity statute provides:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *.
"(2) Aid or abet another in committing the offense.
"* * *.
 "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
To "aid" has been defined as "to assist," and to "abet" has been defined as "to incite or encourage." State v. Sims (1983),10 Ohio App.3d 56, 58.
To be guilty of aiding and abetting sexual battery, the trial court would have had to have found that: (1) Victoria Akers knew that appellant was taping the activity between her and her daughter; and (2) that some form of "sexual conduct," as that term is defined in R.C. 2907.01(A), occurred between Ms. Akers and her daughter. From viewing the tape, it is clear that Victoria Akers and her daughter did not engage in anal intercourse or cunnilingus; therefore, to find appellant guilty of aiding and abetting sexual battery, the trial court would have to have found that Victoria Akers, without privilege, inserted, however slight, a body part or instrument into her daughter's vaginal or anal cavity. After review of the tape, we cannot say that the trial court's finding on the sexual battery charge was based on insufficient evidence or was against the manifest weight of the evidence. Therefore, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant contends that the trial court erred when it sentenced him to the maximum sentence without making the appropriate findings on the record pursuant to R.C. 2929.14(C). The standard of review applicable to this assignment of error is set out in R.C. 2953.08(G)(1). That section provides, in pertinent part:
 "The court hearing an appeal of a sentence under division (A) or (B)(1) or (2) of this section may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds any of the following:
"(a) That the record does not support the sentence;
"* * *.
"(d) That the sentence is otherwise contrary to law."
R.C. 2929.14(C) requires that the trial court make certain findings on the record when sentencing a criminal defendant to the maximum prison term. That section provides:
 "(C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
The record reveals that the trial court did, indeed, sentence appellant to the maximum sentences. See R.C. 2929.14
(A)(2)and (3). Therefore, according to R.C. 2929.14(C), the court would be required to make findings on the record either that appellant committed the worst forms of the offense, that he posed the greatest likelihood of committing future crimes, that he was a major drug offender, or that he was a repeat violent offender. See R.C. 2929.14(C). The transcript of the sentencing hearing records the trial judge as stating:
 "Well, the Court finds that you committed the worst form of the sexual offenses. There's just no doubt about that. Involving your own wife and your own daughter. And there's a likelihood, a great likelihood of committing future crimes.
"So the longest term is in order."
However, these findings do not appear in the court's judgment entry sentencing appellant. We read appellant's third assignment of error as challenging the fact that the required findings were not made in the judgment entry; appellant apparently contends that "on the record" as used in R.C. 2929.14(C) means in the judgment entry of sentence.
To support his contention that the findings required by R.C. 2929.14(C) must be made in the judgment entry, appellant relies on this court's decision in State v. Evans (May 28, 1999), Sandusky App. No. S-98-035, unreported. In that case we stated:
 "As a sentencing court has a statutory obligation to make its sentencing considerations and findings `on the record' and the court speaks only through its journal, a sentencing entry totally devoid of any reference to the statutory considerations is insufficient to satisfy the requirements that these determinations be made manifest."
However, Evans was decided before the Supreme Court of Ohio released its decision in State v. Edmonson (1999), 86 Ohio St.3d 324. Since the Edmonson decision, this court has determined that the findings required by the sentencing statutes may be made either orally at the sentencing hearing or in written form in the judgment entry. See State v. Meadows (Dec. 17, 1999), Lucas App. Nos. L-98-1424, L-98-1425, unreported, at LEXIS *8, fn 2, discretionary appeal not allowed (Apr. 19, 2000), 2000 Ohio LEXIS 897.[1] See, also, State v. Brown (Feb. 11, 2000), Sandusky App. No. S-99-024, unreported, at LEXIS *4; State v. Harper (Apr. 5, 2000), Summit App. No. 19605, unreported, at LEXIS *5, fn 1 (both post-Edmonson cases indicating that findings made at the sentencing hearing and appearing in the transcript are sufficient to satisfy the statutory requirements). Accordingly, we find that the record clearly and convincingly supports the sentence, and appellant's third assignment of error is not well-taken.
Though the trial court made the required statutory findings on the record, we have discovered an error in the judgment entry. The judgment entry states that appellant is to serve four years on Count 4, extortion, and not five years as the trial judge stated on the record at the sentencing hearing. Clearly, this is a clerical error occurring in the judgment entry. In making his findings at the sentencing hearing the judge was very clear that he intended to give appellant the maximum terms, and the judge orally ordered the maximum terms. Appellant understood that he was receiving the maximum terms and assigned this as error in this appeal. Additionally, in his statement of the case in his brief, appellant concedes that he received five years on Count 4. Since the court may correct clerical errors at any time, see Crim.R. 36, this case will be remanded to the trial court to correct the clerical error in the judgment entry of the sentence and to make the judgment entry of the sentence conform to the transcript of the sentencing hearing.
See State v. St. Aubyn Burnett (Sept. 18, 1997), Cuyahoga App. No. 72373, unreported, discretionary appeal not allowed (1998),81 Ohio St.3d 1416; State v. Burgermeister (Oct. 25, 1990), Cuyahoga App. No. 57649, unreported, at fn. 1, appeal dismissed (1991),58 Ohio St.3d 707.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal. This case is remanded to the trial court to correct a clerical error in the judgment entry of sentence to reflect that appellant received a term of five years on Count 4, extortion.
JUDGMENT AFFIRMED.
 ______________________________________ Melvin L. Resnick, J., JUDGE
 Richard W. Knepper, P.J., Mark L. Pietrykowski, J. JUDGES, CONCUR.
[1] We stated in footnote 2 of Meadows:
 "Edmonson puts to rest the question of whether or not all findings and reasons for sentence enhancement must be contained in the written sentencing entry. In Edmonson at 327 and 329, the court ratifies the practice that supporting rationale may be either oral or in writing."