OPINION
Defendant-appellant, Leslie Johnson, appeals his conviction in the Mahoning County Court of Common Pleas on a single count of complicity to commit aggravated murder and three counts of complicity to commit attempted aggravated murder. For each of these offenses, appellant was also convicted of firearm specifications.
At the time of the events in question appellant was a member of the Crips gang. On June 10, 1996, members of the Bloods, a rival gang, attacked appellant and other Crip gang members. Edward McGaha was wounded in the attack and taken to the hospital. Upon his return home, he and other Crip gang members plotted their revenge against the Bloods. The resulting plan called for the killing of Richard Miles a.k.a. Boom, the primary perpetrator of the earlier attack.
In order to execute their revenge, members of the Crips stole two vehicles, borrowed a third, and began searching the Youngstown streets in search of Bloods. Appellant rode in one of the stolen vehicles, a blue Pontiac Bonneville, driven by Denicholas Stoutmire. Damian Williams rode in the front passenger seat while appellant and Sidney Cornwell rode in the rear. At approximately 3:30 a.m., Stoutmire stopped the vehicle in front of an apartment on Oak Park Street in Youngstown. A conversation ensued between Cornwell and the people sitting on the porch of the apartment. Cornwell apparently asked if Boom was at the apartment. When Donald Meadows and Susann Hamlett replied that Boom was not at the apartment, Cornwell shouted "Tell Boom this". Cornwell then began firing a semi-automatic weapon at the porch area striking Meadows, Samuel Lagese, Marilyn Conrad, and killing three year old Jessica Ballew.
On July 26, 1996, appellant was indicted by the Mahoning County Grand Jury on one count of complicity to commit aggravated murder, in violation of R.C. 2923.03 (A) (2) and 2903.01 (A) and three counts of complicity to commit attempted aggravated murder, in violation of R.C. 2923.03 (A) (2), 2923.02 (A) and 2903.01 (A). In addition, each of the counts carried a firearm specification pursuant to R.C. 2941.141 and 2929.71 (A).
A jury trial followed and on September 24, 1996, the jury found appellant guilty of all charges and specifications. Appellant was thereafter sentenced to a term of life imprisonment for the charge of complicity to commit aggravated murder, with three years actual incarceration for the firearm specification. On the remaining three counts, appellant was sentenced to an indefinite term of ten to twenty-five years on each, and the firearm specifications for all four offenses were merged. The trial court ordered the sentences to be served consecutively. On October 10, 1996, appellant filed a timely notice of appeal.
Appellant's sole assignment of error states:
 "APPELLANT'S CONVICTIONS, BASED ON HIS ROLE AS AN ALLEGED `AIDER AND ABETTOR,' ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
Appellant argues that his only contribution to the unlawful act was being a passenger in the automobile from which the principal offender fired the weapon, and that there was no evidence to show that he did anything to aid or abet Cornwell in the offense. Appellant claims that mere approval or acquiescence without express concurrence or an actual contribution to the unlawful act is insufficient proof of complicity (citing Columbusv. Russell [1973], 39 Ohio App.2d 139 and State v. Johnson [1983],10 Ohio App.3d 14). Appellant also cites State v. Sims (1983),10 Ohio App.3d 56 and Smith v. State (1931), 41 Ohio App. 64, for the proposition that simply being a passenger in an automobile does not constitute aiding and abetting. Finally, appellant argues that his conviction as an aider and abettor required proof beyond a reasonable doubt that he advised, hired, incited, commanded, counseled or otherwise participated in the unlawful act (citingState v. Starr [1970], 24 Ohio App.2d 56). Appellant argues that his conviction is against the manifest weight of the evidence insofar as the evidence fails to show any involvement on the part of appellant beyond simply being present in the vehicle.
In response, appellee, State of Ohio, argues that the evidence at trial showed appellant was more than a mere passenger in the attack. According to appellee, the evidence showed that appellant was involved in the plan to kill Miles and others. Appellee points to appellant's involvement with the Crips, his participation in the search for Miles and the fact that after the shooting, appellant met up with other gang members and went into hiding. Appellee argues that appellant's presence in the stolen vehicle with Cornwell strengthened, helped, and encouraged the latter in his criminal act. Hence, according to appellee, the evidence supports appellant's conviction as an aider and abettor.
Although appellant's assignment of error is couched in terms of manifest weight, much of appellant's argument appears directed towards challenging the sufficiency of the evidence. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. Statev. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380,386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, supra, at 113.
Alternatively, in determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Thompkins, supra, at 387. "Weight of the evidence concerns `the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial.Id., at 390, (Cook, J., concurring). "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict." Id., at 388. (Emphasissic.).
Appellant was convicted of complicity to commit aggravated murder, a violation of R.C. 2923.03 (A) (2) and 2903.01 (A) for the killing of Jessica Ballew. R.C. 2923.03 provides in pertinent part as follows:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
 "(2) Aid or abet another in committing the offense;"
R.C. 2903.01 (A) provides that:
 "(A) No person shall purposely, and with prior calculation and design, cause the death of another * * *."
With respect to the remaining three victims, appellant was charged with complicity to commit attempted aggravated murder, in violation of R.C. 2923.03 (A) (2), 2903.01 (A) and 2923.02 (A). R.C.2923.02 (A) states in pertinent part:
 "(A) No person, purposefully or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
Ohio's complicity statute does not define aiding and abetting. A comprehensive discussion of these terms is found inState v. Sims (1983), 10 Ohio App.3d 56, 58, wherein the court of appeals stated as follows:
 "[T]he terms `aid' and `abet' are familiar and simple legal terms. To aid is to assist. To abet is to incite or encourage. Mere association with the principal is not enough."
In the absence of a conspiracy or some preceding connection with the transaction, one does not aid and abet if one merely sees a crime being committed. Id., at 59, (citing Goins v. State [1889],46 Ohio St. 457). Mere approval or acquiescence without express concurrence or the doing of something to contribute to an unlawful act is not aiding or abetting. Sims, supra, at 59. As the court noted in Smith v. State (1931), 41 Ohio App. 64, 68, "[i]f A. knows that B. is illegally transporting liquor by truck, he does not aid and abet him therein by merely riding with him as a passenger upon the truck, although A.'s presence and failure to object may in a sense encourage B."
In the instant case, the only witnesses that were able to testify about the conduct of appellant were Damian Williams, Edward Bunkley and Edward McGaha, individuals themselves involved in the shooting.[1] Williams, a passenger in the car with appellant, was the first of the three to testify. He testified that on the day in question, appellant had been at the house of an individual known only as Heavy, along with individuals associated with the Crips gang, including Cornwell. Williams also testified that appellant rode in the blue Pontiac Bonneville in the rear passenger side seat. According to Williams the individuals in the car were looking for Miles and were going to shoot him if they found him. Williams also testified that after driving around and failing to find Miles, the three cars stopped at a light, at which time appellant got out of the Bonneville to get a light for his cigarette from one of the other vehicles. After resuming his position, the car then headed for Oak Park Avenue. When the group arrived at the Oak Park area, they pulled up and briefly discussed a plan of kicking in the apartment door. According to Williams, this plan was rejected because of the risk that they themselves could be shot. Williams then described how Cornwell fired into the porch area.
On cross-examination, Williams stated that no conversation had occurred at Heavy's house about anything in particular, but that he had only been there for a short time. Williams also stated that while Cornwell was questioning the victims as to Miles' whereabouts, and when he actually opened fire upon them, appellant did not say or do anything to incite Cornwell into doing what he did, nor did he do anything to calm him down. In addition, Williams described appellant as being upset after the incident and stated that Williams and Cornwell were the only persons in the car with guns.
Next to testify was Edward Bunkley, the driver of one of the other vehicles involved. Bunkley also testified that appellant had been at Heavy's house and that the general discussion had been directed towards getting back at Miles for the day's earlier events. Bunkley then testified that earlier in the day appellant had a gun on him, but did not know if he had one during the night in question. On cross-examination, Bunkley admitted that he was unable to recount any particular statement that appellant made to him on the night in question nor was he able to say whether appellant had spoken to Cornwell.
Following Bunkley, the next witness was Edward McGaha, the individual shot by Miles earlier in the day. McGaha testified that he rode in a different car than the one appellant rode in. After the shooting, McGaha testified that he returned to Heavy's house where appellant was also, and that appellant told him that he thought Cornwell had killed a baby. In addition, McGaha stated on cross-examination that appellant appeared upset after the incident and was angry at Cornwell.
The remaining witnesses were the victims, police officers, and various medical and forensic witnesses, none of whom had any personal knowledge of appellant's conduct that night.
The record in this case fails to demonstrate that appellant aided or abetted Cornwell in his criminal act. Appellee, in its brief, describes how appellant was a member of a gang, was with other gang members on the night in question, rode along in a stolen car looking for rival gang members, and, after the shooting, met up with other gang members and went into hiding, none of which constitutes evidence of aiding or abetting. Appellee argues that traveling in numbers strengthened the principal in the plan to extract revenge, and encouraged Cornwell to carry out the attack. However, as the court in Smith, supra, noted, riding along as a passenger is not aiding and abetting even though it might, in a sense, encourage the principal in his act.
An accomplice must perform some act to facilitate the commission of the principal offense. See Sims, supra. The act may be a physical act or verbal encouragement, but mere presence at the crime scene is not enough for accomplice liability, even if that person silently approves of the crime. 3 Katz Giannelli, Criminal Law, Ch. 92.5, (1996). "For accessorial liability, the person must do something; thoughts alone are not sufficient." Id., Ch. 92.5, at 238.
Appellee's failure to point to a single act on the part of appellant which could be viewed as assisting or encouraging Cornwell in the attack appears to be a less than candid admission that the evidence adduced at trial was insufficient to support appellant's conviction. Appellee makes much of the fact that appellant was involved in a plan to kill Miles. Certainly, the record contains evidence from which the jury could have reasonably concluded that appellant assisted in planning for the execution of Miles. However, appellant was not charged with the separate offense of conspiracy. In addition, the indictment returned against appellant did not indicate that his alleged liability as an accomplice was predicated upon his involvement in a conspiracy, nor was the jury instructed on conspiracy.
R.C. 2923.03 (A) (3) provides:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
 "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;"
Hence, under Ohio law, conspiracy is both an independent crime, in violation of R.C. 2923.01, and a basis for accomplice liability under R.C. 2923.03 (A) (3). Nonetheless, if appellee intended to proceed against appellant on the basis of his alleged involvement in a conspiracy it was required to give notice of such in the charging instrument. Cf. State v. Lewis (1970), 21 Ohio St.2d 203. ("Where an indictment for a conspiracy to defraud under [R.C. 2921.14] specifies the manner or manners of defrauding relied upon as the defrauding part of that conspiracy, a conviction cannot be based upon evidence establishing a manner of defrauding other than one so specified").
Had appellee elected to charge appellant with complicity based on his involvement in a conspiracy pursuant to R.C.2923.03 (A) (3) it was free to do so. In addition, had appellant been charged under the principal offenses of aggravated murder and attempted aggravated murder this would have served as notice to appellant that the jury could have received an instruction on complicity which could have involved further instruction on conspiracy. See State v. Keenan (1998), 81 Ohio St.3d 133, 151;State v. Milliner (1994), 98 Ohio App.3d 262, 267. However, by charging appellant solely under R.C. 2923.03 (A) (2) as an aider or abettor, appellee failed to provide appellant with sufficient legal notice that he could be convicted for the offense based on his role as a conspirator.
Hence, although the evidence at trial could reasonably support a finding that appellant was involved in a conspiracy to kill Miles, such a finding is insufficient to support convictions stemming from an indictment charging appellant with complicity to commit aggravated murder and attempted aggravated murder based on appellant's alleged aiding and abetting of the principal offender. Although we are reluctant to do so, our obligation to follow the law necessitates us finding that the evidence presented in this case was legally insufficient to support appellant's convictions under R.C.2923.02 (A) (2). Having found so, we need not address appellant's arguments as they relate to the manifest weight of the evidence.
Appellant's sole assignment of error is found to be with merit.
The judgment rendered by the trial court is hereby reversed and appellant is ordered discharged.
Cox, J., concurs, Waite, J., dissents; see dissenting opinion.
 ____________________ Gene Donofrio, Judge
[1] The victims, Marilyn Conrad, Donald Meadows and Samuel Lagese, were unable to identify appellant as being in the car.