THE STATE OF OHIO, APPELLEE, *v.*
SIMS, APPELLANT.

(No. 45366—Decided June 6, 1983.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. John A. Frenden,* for appellant.

JACKSON, P.J. Appellant was indicted and subsequently convicted of two counts of receiving stolen property (R.C. 2913.51),[1] and one count of possession of criminal tools (R.C. 2923.24).[2] He was arrested while a passenger in a stolen car. The stolen property which was the basis for the first two counts of the indictment was the motor vehicle and the license plates. The criminal tool which was the subject of the third count of the indictment was a screwdriver found on the front seat of the car.

Appellant was convicted on the testimony of patrolman Paskvan of the Cleveland Police Department. Officer Paskvan stated that he observed a 1975 Cadillac with a punched out trunk lock parked in front of the King's Bar, at about 1:00 a.m. on the morning of April 8, 1981. He stated that the vehicle contained four passengers. A computer check of the license plate revealed that the plate had been stolen. The policemen noted that the

---

[1] R.C. 2913.51(A) provides:

"No person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

[2] R.C. 2923.24(A) provides:

"No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally."

ignition lock had also been removed, and that the car was probably started with a screwdriver lying on the front seat. The vehicle identification number on the dashboard was also checked through the computer, and the results indicated that the car was stolen.

The driver of the automobile was Joseph Sanders. Next to him sat a woman. The appellant, Clayborn Sims, was in the rear seat, sitting next to two women. Upon his arrest, appellant allegedly stated to the police, "the girls didn't know nothing about it. Why didn't we let them go?" The police released the women at the scene and did not mention them in the police report of this incident. Officer Paskvan explained, "I'm a male chauvinist. I don't usually lock up women."

Roosevelt Thomas testified that he was the owner of the automobile, that it was stolen from him, and that he did not know Mr. Sanders or the appellant.

The owner of the license plates was not called to testify. Instead, Officer Paskvan identified a computer print-out which indicated that the plates were stolen. The print-out was admitted into evidence over appellant's objections as State's Exhibit No. 3.

The appellant took the stand on his own behalf. He testified that he and two women friends (Denise Milan and Rosemary Anglin) arrived at the King's Bar at about 7:30 p.m. They took a taxi cab to the tavern because appellant does not own an automobile. He stated that Ms. Anglin asked Mr. Sanders for a ride home, and Mr. Sanders agreed, if they would give him some money for gas. They agreed to this. Appellant, Ms. Anglin and Ms. Milan left the bar and entered the rear seat of the automobile which was parked in front of the bar. Sanders' daughter, Carla, was sitting on the passenger side in the front seat. The police immediately pulled alongside the automobile and ordered the occupants out.

Appellant stated that he had not seen Mr. Sanders earlier that day, that he had never seen the automobile before, and that he did not know that it was stolen. He also testified that he did not know that the license plate was stolen, and that he did not notice the damage to the steering wheel.[3] He denied saying to Officer Paskvan that the women "don't know anything about this."

Ms. Anglin testified for the defense. Some of the particulars of her testimony differed from that of appellant's. She stated that they walked to the King's Bar, that they were there for only one hour, and that it was appellant who asked Sanders for a ride. She stated that as Sanders was getting ready to start the car, Officer Paskvan came up to the car and ordered them out of it. He told the women to walk away, but he arrested the men.

She stated that she had not seen the car before, that she did not know that it was stolen, and that she did not see the screwdriver in the car.

Appellant has assigned four errors for review by this court on appeal.[4] In essence, he contends that the computer print-out showing that the license plate

---

[3] In oral arguments before this court, counsel for the parties apparently agreed that appellant and the two women accompanying him were in the rear seat of the automobile only about thirty seconds before the police ordered them out.

[4] The appellant's assignments of error are: "1. Appellant's convictions for receiving stolen property are contrary to the weight of the evidence.

"2. The state failed to prove that the property in question (license plate) was stolen.

"3. All convictions predicated on the principal [sic] of aiding and abetting are contrary to the weight of the evidence.

"4. The court erroneously instructed the jury on the law of aiding and abetting."

was stolen was improperly admitted, that the trial court erroneously defined the term "aiding and abetting" to the jury, and that the verdicts of guilty are against the manifest weight of the evidence.

I

The state contends that since the computer print-out was properly authenticated (identified) by Officer Paskvan, that it is therefore admissible. The state thereby overlooks a basic rule of evidence. Identification of an exhibit is only the first step in building a foundation for its admission. It must also be shown that the exhibit is material and relevant evidence (which it obviously was), and that it is competent evidence, *i.e.,* not subject to exclusion under the hearsay rule.

The relevant provision in the Ohio Rules of Evidence is Evid. R. 803(8), entitled "Public records and reports." This rule sets forth a limited exception to the hearsay rule for public records, and provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(8) * * * Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) *matters observed pursuant to duty imposed by law as to which matters there was a duty to report,* excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, *unless the sources of information or other circumstances indicate lack of trustworthiness."* (Emphasis added.)

There was no showing that this data compilation involved "matters observed pursuant to duty imposed by law." Moreover, in the opinion of this court, a computer print-out report is not reliable and trustworthy proof that an object has been stolen. Errors commonly occur in the recording, retention and retrieval of computer information. A conviction for a theft-related offense cannot stand where a necessary element of the crime is demonstrated solely by reference to hearsay information on a police computer print-out indicating that certain property was stolen. This assignment of error is well-taken.

II

The instruction of the trial court to the jury, in the case at bar, on the subject of "aiding and abetting" was as follows:

"It is a rule of law that a person who knowingly and purposely associates himself with another person in the commission of a crime is regarded as if he were the principal offender, and is just as guilty as if he, personally, performed every act constituting the offense."

This definition is erroneous. The statute on complicity does not define "aiding and abetting." It provides:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense." R.C. 2923.03(A).

However, the terms "aid" and "abet" are familiar and simple legal terms. To aid is to assist. To abet is to incite or encourage. Mere association with the principal is not enough. *State* v. *Clifton* (1972), 32 Ohio App. 2d 284 [61 O.O.2d 348]. Black's Law Dictionary (Rev. 4 Ed. 1968) defines an "aider and abettor" in the following terms:

"One who assists another in the accomplishment of a common design or purpose; he must be aware of, and consent to,

such design or purpose. Peats v. State, 213 Ind. 560, 12 N.E.2d 270, 277.

"One who advises, counsels, procures, or encourages another to commit a crime, himself being guilty of some overt act or advocacy or encouragement of his principal, actually or constructively present when crime is committed, and participating in commission thereof by some act, deed, word, or gesture, Turner v. Commonwealth, 268 Ky. 311, 104 S.W. 2d 1085, and sharing the criminal intent of the principal. State v. Reedy, 97 W.Va. 549, 127 S.E. 24, 28. But one who incites or instigates the commission of a felony when he is neither actually nor constructively present is an 'aider, abettor, or procurer' within the meaning of a statute. Neal v. State, 104 Neb. 56, 175 N.W. 669, 670."

The United States Court of Appeals for the Sixth Circuit has succinctly defined an "aider and abettor" in the following statement from *Morei* v. *United States* (1942), 127 F. 2d 827, 830-831:

"* * * A person is not an accessory before the fact, unless there is some sort of active proceeding on his part; he must incite, or procure, or encourage the criminal act, or assist or enable it to be done, or engage or counsel, or command the principal to do it. * * *"

Ohio courts of appeals have previously held that, to constitute aiding and abetting, the accused must have taken a role in causing the commission of the offense. In *State* v. *Starr* (1970), 24 Ohio App. 2d 56, 58 [53 O.O.2d 167], the Hamilton County Court of Appeals held:

"* * * Before one can be convicted as an aider or abettor it must be proven beyond a reasonable doubt that he advised, hired, incited, commanded, or counselled the principal to do the act. * * *"

A frequently quoted definition of "aiding and abetting" is contained in *Smith* v. *State* (1931), 41 Ohio App. 64, 67-68:

"In the absence of a conspiracy or some preceding connection with the transaction, one does not aid and abet if he merely sees a crime being committed. *Goins* v. *State,* 46 Ohio St., 457, 21 N.E., 476.

"Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act. *State* v. *Peasley,* 79 Wash., 99, 141 P., 316.

"Without previous connection with the transaction, one is not an aider or abettor unless he knowingly does something which he ought not to do, or omits to do something he ought to do, which assists or tends in some way to affect the doing of the thing which the law forbids; in order to aid or abet, whether by words, acts, encouragement, support or presence, there must be something more than a failure to object unless one is under a legal duty to object. If A. knows that B. is illegally transporting liquor by truck, he does not aid and abet him therein by merely riding with him as a passenger upon the truck, although A.'s presence and failure to object may in a sense encourage B. As A. does nothing to further or affect the transportation, he is not an aider or abettor. * * *"

There was no evidence that appellant assisted or encouraged Sanders, the driver of the stolen automobile, in his retention of the automobile, license plate, or screwdriver, or that he had a legal duty to object. The only evidence adduced indicated that appellant was "associated" with Sanders, in that he was a passenger in the car with Sanders for about thirty seconds when he and his women companions were ordered out of the car by police. This court is persuaded that the instruction by the trial court, in view of the evidence before the jury, was prejudicial error. This assignment of error is well-taken.

## III

The appellant also contends that his convictions are against the manifest weight of the evidence.

Appellant did not have actual possession of any of the three items of contraband (the automobile, the license plates, and the screwdriver). Nor can it be said that he had constructive possession of either of the items. "Constructive possession" is defined in *State* v. *Wolery* (1976), 46 Ohio St. 2d 316, at 329 [75 O.O.2d 366], as follows:

"* * * Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession."

No evidence was adduced to demonstrate that appellant exercised dominion and control over any of the three items in question.

As previously indicated, there was no evidence that appellant aided or abetted Sanders in the commission of these offenses. We therefore hold that the verdicts are not supported by evidence sufficient to create a *prima facie* case. It was error for the trial court to submit the question of appellant's guilt to the jury, and judgment for acquittal should have been entered pursuant to Crim. R. 29. *A fortiori*, the verdicts were also against the manifest weight of the evidence.

Accordingly, appellant's convictions are reversed, and judgment is entered in favor of appellant on all counts.

*Judgment reversed.*

DAHLING, J., concurs.

NAHRA, J., concurs in judgment only.

DAHLING, J., of the Eleventh Appellate District, sitting by assignment in the Eighth Appellate District.