I must respectfully disagree with the opinion of the majority here. I would affirm Appellant's conviction.
As the majority points out, Appellant's conviction on complicity to commit aggravated murder and complicity to commit attempted aggravated murder do, indeed, hinge on a definition of "aid or abet" as found in R.C. § 2923.03 (A). but not defined there. Since at no time was it claimed that Appellant was the principal offender in the shootings of the adults and the death of the toddler, it is clear that in order for Appellant's conviction to withstand scrutiny based on the legal sufficiency of the evidence against him, since the crime is predicated on Appellant's aiding and abetting the murder and attempted murder, we must first be clear as to those definitions.
Not only is there no statutory definition of the terms "aid" or "abet," there is no recent Supreme Court case defining those terms. It is generally accepted, as the majority states, that the leading case on this issue is State v. Sims (1983),10 Ohio App.3d 56. The majority does quote from Sims in reaching its decision, here. It is clear from Sims that merely witnessing a crime, or even silent approval of the crime, without some overt act, is not enough to legally sustain a conviction. While the reasoning behind this pronouncement is not set forth, this rule of law is to protect an innocent bystander from being charged with a crime about which he, or she, could do nothing. One who simply watches an unlawful act, but has not planned or otherwise participated in its commission, cannot be charged with a crime even if he or she does nothing to stop its commission, in most instances.
Sims quotes extensively from State v. Peasley, 79 Wn. 99,141 P. 316, in reaching its ultimate decision. In full, this quote reads as follows:
 "Without previous connection with the transaction, one is not an aider or abettor unless he knowingly does something which he ought not to do, or omits to do something he ought to do, which assists or tends in some way to affect the doing of the thing which the law forbids; in order to aid or abet, whether by words, acts, encouragement, support or presence, there must be something more than a failure to object unless one is under a legal duty to object. If A. knows that B. is illegally transporting liquor by truck, he does not aid and abet him therein by merely riding with him as a passenger upon the truck; although A.'s presence and failure to object may in a sense encourage B. As A. does nothing to further or affect the transportation, he is not an aider or abettor. * * *" (emphasis added).
 Sims also looked at the definition of "aider and abettor" in the fourth edition of Black's Law Dictionary, which defined it as, "one who assists another in the accomplishment of a common design or purpose; he must be aware of, and consent to, such design or purpose," id. at 58-59 (citations omitted). Black's Law Dictionary (Rev. 6th Ed. 1990) defines "abettor" in part, as,
 "One who commands, advises, instigates or encourages another to commit a crime. A person who, being present, incites another to commit a crime, and thus becomes a principal. To be an "abettor" [the] accused must have instigated or advised commission of [the] crime or been present for [the] purpose of assisting in its commission; he must share criminal intent with which crime was committed. Plape v. Francis, 71 C.2d 66, 75 Cal.Rptr. 199, 203, 450 P.2d 591." (emphasis added).
Notwithstanding the majority's view that, in order to be convicted as an aider or abettor there must be legally sufficient evidence that the accused was "aiding" or "abetting," whether or not one is aiding or abetting a crime is a fact-based determination. In Sims, the Cuyahoga County Court of Appeals ultimately decided to reverse the defendant's conviction based on the fact that the only evidence adduced at trial that Mr. Sims was associated in any with the theft of the automobile was that, ". . . he was a passenger in the car with [the thief] for about thirty seconds . . .," Sims at 59. The court specifically found that there was no evidence in the record that Mr. Sims assisted or encouraged the theft in any way.
As a matter of record in the case before us, I find there is more than enough evidence that Appellant assisted or encouraged the murder and the attempted murders. I believe the record shows, as Black's defines it, that Appellant's presence was absolutely intended for the purpose of assisting with a murder or murders. We have no innocent bystander here.
While logic is sometimes not readily apparent in the law, I believe we must use logic when looking at the record, here. Appellant is a gang member; he is a member of the Crips. This gang, like many others, is not merely a fraternal or social organization but exists for the mutual "protection" of its members. It is undisputed in the record that Appellant was present when the murder of Richard Miles (a.k.a. Boom) was planned. Two cars were stolen for this purpose, and Appellant was riding in the lead stolen car in a three-car caravan; thus, Appellant was undoubtedly well-placed in the gang. Appellant rode in this car in the caravan in areas of Youngstown known to be frequented by rival gang members. Ultimately, the caravan ended up at a location frequented by Mr. Miles where Appellant's seat-mate in this lead stolen car pulled out a gun and shot the persons at this location. Appellant and the others then fled and went into hiding until their ultimate apprehensions by police.
It defies logic to say that Appellant did not know the purpose of this trip and was an innocent bystander to the ultimate shooting. The record reflects Appellant was present for portions, at least of the gang's planning. Further, while it is true that no witness testified that Appellant verbally incited violence or that Appellant had a weapon, the only reason Appellant had the dubious honor of riding in the lead car with the shooter, the evidence reflects, was his active participation in carrying out the crime. Here, mere presence is enough because Appellant's mere presence furthered encouragement of the criminal activity. This is how gangs operate, to a large extent, and this is borne out by the evidence in the transcript. As both Sims and Black's definition point out, mere presence may
be enough to aid or abet in a crime, given the correct facts.
Unlike the defendant in Sims, who solicited a ride and sat in the back of what turned out to be a stolen automobile for thirty seconds, even though he may, or may not have seen the peeled steering column and criminal tools in the front seat, Appellant was present for the planning of a murder or murders, rode for the better part of a day in a car that was stolen in a three-car caravan admittedly searching the City for Miles or any member of the Bloods. Appellant knew the plan was murder. Appellant stayed with the plan with this knowledge. Appellant fled after the shootings and hid with the others. From the record presented, Appellant aided and abetted in the shootings that resulted from this plan. Appellant's presence was part and parcel of this plan. I do not believe that the evidence in the record reflects that Appellant was merely along for the ride, as it were. Appellant's participation in the pre-planning of murder and his participation in actively seeking out the victim or victims sets this matter apart from that found in Sims by its own terms and as the terms "aid or abet" are defined.
For all of the foregoing, I must respectfully dissent with the majority and would affirm the conviction in this matter.
 ______________________ CHERYL L. WAITE, JUDGE