OPINION
Defendant-appellant, Antwand D. Jones, appeals from the decision of the Mahoning County Court of Common Pleas finding him guilty of three counts of aggravated murder, two counts of attempted aggravated murder, and two counts of aggravated robbery, all with firearm specifications, following a jury trial.
In the early evening hours of April 29, 1996 appellant was watching television at Willie Herring's (a.k.a. Stevie) house with Kitwan Dalton, Eugene Foose (a.k.a. Juan), Lou Allen, and Adelbert Callahan (a.k.a. Ironhead). According to Dalton, at some point during the evening appellant and Ironhead left Stevie's house. When appellant and Ironhead returned, they had a dark green van with them.
According to Dalton, everyone got into the van to go for a ride. While they were riding around, they stopped at a blue house to get some guns. At this time, Ironhead was driving the van and it was Stevie's idea to stop and get the guns. Stevie went into the blue house and exited with three revolvers and two AKs. The guys in the van talked about going to The Newport Inn (The Newport), a local bar on the south side of Youngstown, and using the guns to get some money. Still according to Dalton, when they arrived at The Newport everyone except Dalton, including appellant, exited the van with a gun and covered their faces with bandanas and masks. Ironhead and Juan went in the front door of The Newport while the others, including appellant, went in through the back.
Other witnesses present at The Newport testified as to what they observed. One of the men demanded money from Herman Naze. Naze stated that he had no money and the man shot and killed him. The same gunman and another gunman shot and killed Dennis Kotheimer. Jimmie Jones was also shot and killed. A different gunman shot Deborah Aziz. The same man who shot Ms. Aziz demanded money from Ron Marinelli, the bar owner. As Marinelli handed the man money from the cash register, the man shot him several times in the stomach. When the gunman pointed his gun at Marinelli's head, Marinelli tried to grab a gun to shoot him but the gunman stole Marinelli's gun and shot him a few more times in the legs. Marinelli and Ms. Aziz survived the shooting.
When the men ran out of The Newport, they got into the van and Dalton drove them away. While in the van, they discussed the shooting and stated that they got some money. Dalton testified that eventually a police cruiser got behind him and put its lights and siren on but he continued to drive until he ran off a cliff. When the van crashed, all of the occupants jumped out and ran away.
Appellant was arrested later that night. He was indicted on June 7, 1996 along with Stevie, Ironhead, Juan, and Dalton on three counts of aggravated murder in violation of R.C. 2903.01(B)(C), two counts of attempted aggravated murder in violation of R.C. 2923.02(A)(E) and R.C.2903.01(B)(C), and two counts of aggravated robbery in violation of R.C.2911.01(A)(1)(B). All of the charges carried firearm specifications with them. After numerous delays, appellant's case proceeded to a jury trial on April 1, 1997. At trial, appellant was not alleged to have been a triggerman in the shootings nor a driver of the van. The court gave the jury instructions on complicity to commit the crimes charged by way of aiding or abetting. The trial lasted several days and the jury reached its verdict on April 8, 1997. The jury found appellant guilty of all charges and of all firearm specifications.
The trial court sentenced appellant on April 9, 1997 and filed its judgment entry on April 14, 1997. It sentenced appellant to life imprisonment with parole eligibility after twenty years on each of Counts 1, 2, and 3. In addition, on Count 1 for the firearm specification, the court sentenced appellant to three years of incarceration. The court merged the firearm specifications on Counts 2 through 7 with the firearm specification on Count 1. It sentenced appellant to an indefinite term of ten to twenty-five years on each of Counts 4, 5, 6, and 7. The court ordered that appellant serve his sentences consecutively.
Appellant filed his timely notice of appeal on May 7, 1997. After numerous motions, delays, and extensions appellant filed his brief on July 27, 2001.
Appellant alleges two assignments of error. His first of assignment of error states:
 "APPELLANT'S CONVICTIONS ARE BASED ON EVIDENCE NOT LEGALLY SUFFICIENT TO SUSTAIN A VERDICT OF GUILTY AS A MATTER OF LAW."
Appellant argues that the evidence in this case was insufficient to support his conviction. He argues that there was no evidence that he did or said anything to aid and/or abet in the robbery or shooting at The Newport. He contends that the sole basis for his conviction was his alleged presence at the scene of the crime. Appellant argues that there was no evidence of a conspiracy and that mere approval or acquiescence does not constitute aiding and abetting. Citing, State v. Sims (1983),10 Ohio App.3d 56, 59. Appellant also contends that his case closely mirrors that of State v. Johnson (June 30, 2000), 7th District No. 96-CA-190, 2000 WL 875371, where this court reversed the defendant's conviction due to insufficient evidence. He asserts that to be convicted as an accomplice, the evidence would have to show that he performed some act to facilitate the commission of the principal offense.
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v.Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith,80 Ohio St.3d at 113.
The jury convicted appellant of three counts of aggravated murder, two counts of attempted aggravated murder, and two counts of aggravated robbery. Although appellant was not accused of being the triggerman nor was he accused of actually taking the money or Marinelli's gun, it was still proper for him to be charged with and convicted of the principal offenses. R.C. 2923.03(F). R.C. 2923.03 states in pertinent part:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
"(2) Aid or abet another in committing the offense;
"* * *
 "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
Since the crimes appellant allegedly committed occurred before July 1, 1996, the versions of the statutes that apply are as follows. R.C.2903.01(B)(C) provides:
 "(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * *, aggravated robbery or robbery, * * *.
 "(C) Whoever violates this section is guilty of aggravated murder, * * *."
R.C. 2923.02 provides in pertinent part:
"(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense.
"* * *
"(E) Whoever violates this section is guilty of an attempt to commit an offense. * * *."
R.C. 2911.01(A)(1)(B) provides:
"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:
"(1) Have a deadly weapon or dangerous ordnance, as defined in section2923.11 of the Revised Code, on or about his person or under his control;
"* * *
"(B) Whoever violates this section is guilty of aggravated robbery, an aggravated felony of the first degree."
Appellant relies largely in part on Sims, 10 Ohio App.3d 56, and on this court's ruling in Johnson, 2000 WL 875371. He is correct in asserting that this case is quite similar to Johnson; however, the Ohio Supreme Court reversed this court's ruling in State v. Johnson (2001),93 Ohio St.3d 240. The court held:
"To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." Id. at syllabus.
In Johnson, the defendant was a backseat passenger in a car containing three fellow gang members. The car in which the defendant was riding was part of a three-car caravan that drove around looking for a rival gang member. The gang members planned to retaliate against the rival gang member for a shooting that had transpired earlier that day. The caravan pulled into an apartment complex looking for their suspect. One of the men who was riding in the car with the defendant exited the car and asked the people on the porch if their suspect was there. When they told him no, he opened fire on the apartment complex killing a three-year-old girl and injuring three others. The defendant was convicted of complicity to commit aggravated murder and three counts of complicity to commit attempted aggravated murder. Although this court reversed the defendant's convictions for lack of sufficient evidence, the Ohio Supreme Court reinstated the defendant's convictions.
In so doing, the Supreme Court concluded that the defendant's actions constituted complicity by aiding and abetting the principal offender. The court reasoned that based on the facts of the case, the defendant was not a mere bystander. It pointed out that the defendant went along with his fellow gang members as protection and support. Id. at 244. The court noted that the defendant was present when the prior shootings took place and when the group decided to seek revenge. Id. It further noted that the defendant got into a stolen car and rode around with the group for over an hour looking for their suspect. Id. The court remarked that the defendant could have abandoned the group at many times, but chose not to do so. Id. Finally, the court observed that after the shootings, the defendant went into hiding for some time. Id. at 245. The court made clear that, "[t]he fact that defendant did not articulate his intent will not allow him to escape responsibility for his clear actions of complicity by aiding and abetting in the commission of these crimes." Id.
The court also distinguished Sims, 10 Ohio App.3d 56, from Johnson. It pointed out that in Sims, the only evidence that the defendant was associated with the principal was that the defendant was a passenger in the principal's car for about thirty seconds. Johnson,93 Ohio St.3d at 243. This was not the situation in Johnson, nor is it the situation in the case sub judice. The evidence in the present case demonstrates that appellant was with the principal offenders before, during, and after they committed the crimes. Appellant does not dispute that his cohorts committed three aggravated murders, two attempted aggravated murders, and two aggravated robberies. Appellant testified that he was at Stevie's house watching television and listening to music with the others. He also testified that he went with Ironhead and Stevie to steal the van, which was corroborated by two witnesses whose combined testimony identifies appellant as the driver of the van when it was stolen. Appellant testified that he rode around with everyone and accompanied them to The Newport. Dalton testified that appellant went into The Newport with the others. Finally, appellant testified that after the crimes were committed, he remained in the van and eventually, when the van crashed, jumped out and ran from the police.
In the case before this court, sufficient evidence exists to support appellant's convictions. The evidence demonstrates that appellant aided and abetted the principals in the commission of the crimes. To "aid and abet" is "`[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" Id. at 243, quoting Black's Law Dictionary (7 Ed.Rev. 1999) 69. The Ohio Supreme Court has held that "`the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" Id., quoting State v. Widner (1982), 69 Ohio St.2d 267, 269. However, in the present case appellant was not merely present at the scene of the crime. Dalton testified that appellant discussed robbing The Newport with Ironhead. He also testified that appellant donned a bandana and trash bag with a revolver on his person and went to the back of The Newport with some of the other guys. Furthermore, appellant testified that he ran from the police until an officer later apprehended him with Dalton.
Thus, appellant has failed to demonstrate how, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of each of the crimes proven beyond a reasonable doubt. Thus, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that the jury's verdict is against the manifest weight of the evidence. He asserts that appellee did not prove that he did anything other than get a ride with the people who perpetrated the robbery and shootings at The Newport.
In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greater amountof credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The evidence adduced at trial reveals the following. Dalton testified that on the night in question, appellant and Ironhead left Stevie's house and returned with a dark green van. He testified that appellant was wearing yellow windbreaker pants. Shequita Cunningham testified that that night she noticed two men in her neighbor's yard and that one of the men was wearing bright orangish-yellow pants. She testified that her neighbor owned a dark green van. Ms. Cunningham further testified that she saw the interior light go on in the van and a few minutes later the man who was not wearing the yellow pants got into the passenger side and the van drove away. Ms. Cunningham stated that she later identified the two men by their clothing. The van owner testified that someone stole her van on the night in question. Dalton testified that the steering column in the van was "peeled."
Dalton further testified that when appellant and Ironhead returned to Stevie's house with the van, he and the others got in to go for a ride. He testified that they rode around for a while, with Ironhead driving, and that Stevie decided that they should stop at a blue house to get some guns. When they stopped at the house Stevie went in alone and exited with three revolvers and two AKs, which he brought in the van. Dalton testified that while in the van they talked about bringing the guns to The Newport and going in to "get some money." (Tr. 213). He testified that appellant discussed the plan with Ironhead. Ironhead drove to The Newport and parked on the side so that the van was facing Indianola Avenue. Dalton testified that everyone, including appellant, got out of the van with a gun except for him. Dalton remained in the van and moved into the driver's seat. He testified that appellant had a revolver and that appellant put a black bandana on his face and a trash bag on his head. He also testified as to the others' guns and masks. Dalton testified that Ironhead and Juan went to the front of the bar while the others went to the back.
The patrons and staff of the bar testified as to what happened next. Deborah Aziz testified that shortly after last call, she walked behind the bar and something at the back door caught her attention. She stated that she saw a man with a gun and that he yelled toward Herman Naze and Mike Muth, "Give me your MF money." (Tr. 31). Naze told the gunman that he did not have any money and the gunman shot him. Ms. Aziz testified that a different gunman then shot her. She testified that the same gunman who shot her demanded money from Ron Marinelli and Marinelli began handing the man money from the register. She further testified that this same gunman shot Marinelli. She stated that the man was wearing a white mask.
Muth testified that the night of the shooting he was sitting at the bar inside The Newport next to Naze. He testified that while he was sitting there he heard someone ask for money and then saw Jimmie Jones fall to the floor after someone shot him. Muth testified that he saw two people enter through the front door and heard others enter through the rear door.
Marinelli testified that on the night in question he first heard what sounded like a gunshot. Marinelli testified that he saw at least four gunmen enter his bar. He stated that two entered through the front and at least two entered in the back. Next, he heard someone demand money from Naze and then shoot him. He stated that two of the gunmen then shot Dennis Kotheimer. Marinelli testified that the gunman with the white mask demanded money from him and as he handed the gunman his money, the gunman shot him numerous times. Marinelli stated that he attempted to grab a gun that he kept in a drawer to shoot the gunman but that the gunman took Marinelli's gun from his hand and shot him again.
Dalton testified that while he waited in the van he heard gunshots and then all of the guys ran out of the bar and jumped in the van. He stated that he drove away while the others talked about the shooting and robbery. While he was driving, Dalton noticed a police car behind him with its lights and sirens on but he kept driving until he drove off a cliff on Earle Street. When the van crashed everyone jumped out and ran away, including appellant. Dalton testified that the police later apprehended him with appellant while they were hiding.
Sergeant Franklin Palmer testified that he followed the dark green van with his lights and sirens on but the van did not stop until it went over an embankment. Sgt. Palmer testified that everybody jumped out of the van, including a man wearing yellow pants. Officer Carl Davis testified that later that morning he saw two black males running through backyards on the south side of Youngstown and that one was wearing light pants. He arrested the two men who turned out to be appellant and Dalton.
Contrary to the above evidence, appellant testified on his own behalf. He testified that he never entered The Newport on the night in question. Appellant testified that he was not involved with the robbery, did not have a gun on him, and did not know what was going to happen at The Newport. Appellant stated that he went to Stevie's house that night to ask Stevie to give him a ride to his girlfriend's house on the east side of town. He stated that Stevie was unable to give him a ride because Stevie's car had transmission problems. Appellant remained at Stevie's house. He testified that Ironhead attempted to steal the van next door but was unsuccessful. Appellant testified that he then left the house with Ironhead and Stevie who were looking in driveways for a car to steal. He stated that he became scared and walked up the street; then Ironhead got the van and picked him up.
Appellant testified that the van never stopped at a house to pick up guns. He stated that there was no talk of the robbery while they rode around and that he did not plan anything with the others. Appellant testified that he asked Ironhead to drop him off on the east side several times. He stated that they pulled into the parking lot of a bar (The Newport) and Stevie, Ironhead, and Allen got out of the van while he waited in the van with Dalton and Juan. He testified that two of the guys went to the back and one went to the front. Appellant stated that he heard gunshots and then everyone got back into the van and drove away. He stated that the van ultimately crashed and he jumped out and ran away.
Although appellant's testimony contradicts Dalton's testimony, it is not up to this court to determine which witness was more credible. Such issues are best left to the trier of fact. Obviously, the jury did not believe appellant's testimony that he was only along for a ride. To be convicted of a crime by way of aiding and abetting the evidence must prove that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited" the principal offender and shared in the principal's intent. Johnson, 93 Ohio St.3d at the syllabus. The defendant's criminal intent may be inferred from the circumstances surrounding the crime. Id. Dalton's testimony revealed that appellant advised and supported the others by way of his conversation about robbing The Newport. Moreover, appellant cooperated with and encouraged the crimes by entering the bar with a gun in his hand and a bandana on his face.
Furthermore, appellant's testimony that only Ironhead, Stevie, and Allen entered The Newport and that one of them went to the front while the other two went to the back is contradicted by the other witnesses. Marinelli testified that at least four gunmen entered the bar. Muth's testimony indicated that two men came in through the front door and others came in through the back. Additionally, appellant himself testified that he went with Ironhead and Stevie to steal the van. Thus, he helped to provide transportation to the crime scene. He also testified that he knew there were at least two guns in the van while they were riding around. He testified that when they pulled into The Newport's parking lot three guys got out of the van and that he knew two of them were armed. Appellant did not object. He testified that he heard the gunshots inside the bar but remained in the van. Appellant also testified that when the van crashed, he jumped out and ran from the police. Appellant further testified that when the police initially questioned him about The Newport shooting he lied and told them that he did not know anything about it because he had been at work at that time.
Appellant had many opportunities throughout the night to abandon his cohorts. He could have left their company after they stole the van. He could have deserted them before they entered The Newport since he knew they were going into the bar with guns. He could have abandoned them after the shooting and robbery occurred. He could have turned them in to the police when the van crashed. Instead, appellant chose to remain in the company of people whom he knew had just shot and robbed the patrons and staff of The Newport. He also ran from the police as did the others until he was later apprehended in the company of one his cohorts.
Accordingly, it cannot be said that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be overturned and a new trial ordered. Thus, appellant's second assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Waite, J., concurs
DeGenaro, J., concurs