{¶ 40} I concur in judgment only with the majority and write separately to clarify my position on that portion of the majority opinion that concludes the jury's verdict finding appellant, Andre Peavy, guilty of drug trafficking in violation of RC 2925.03 was against the manifest weight of the evidence.
{¶ 41} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948),150 Ohio St. 303, 345.
{¶ 42} The standard employed when reviewing a claim based upon the weight of the evidence is not the same as the standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982), 457 U.S. 31, where the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
{¶ 43} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 44} There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
{¶ 45} Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence we must accord due deference to those determinations made by the trier of fact.
{¶ 46} The following witnesses testified at the trial for the State of Ohio:
{¶ 47} 1. Cleveland Police Officer Gerald Sowul;
{¶ 48} 2. Cleveland Police Officer Kevin Grady;
 {¶ 49} 3. SIU representative from the Cleveland Police Department, Cynthia Lewis; and
{¶ 50} 4. Cleveland Police Officer Raymond Francel.
{¶ 51} The following witness testified for the defense:
 {¶ 52} 1. Ivory Stanton Jr., A co-defendant who was convicted of drug possession out of this incident.
{¶ 53} The jury had ample opportunity during the testimony of each witness to weigh the evidence and judge the credibility of each witness. It is Officer Sowul's testimony that establishes Peavy's role in the drug transaction.
{¶ 54} Officer Sowul and his partner were assigned to the Fresh Start unit in the Cleveland Police Department's Fourth District to conduct drug surveillance operations in the area of East 116 and Lardette. There were numerous drug-related complaints generated through the mayor's office or made directly to the police station concerning drug activity in this area. (Tr. 157-158) Additionally, Officer Sowul testified that he had been observing several males whom he believed to be conducting drug activity in the area of East 116 and Continental for approximately 15-20 minutes. (Tr. 159) Officer Sowul, along with his partner, observed the occupants of a maroon GMC Jimmy driving southbound on East 116 approaching Lardette Street flagging down Jones and Peavy on the east side of the street. (Tr. 159) Officer Sowul observed Jones and Peavy run across the street in response to the vehicle and approach the passenger side of the vehicle. (Tr. 159-160) Jones reached into his pocket, pulled out the contents, and displayed the contents of his pocket to the occupants of the vehicle, Stanton and Collin. (Tr. 160) Officer Sowul then observed Jones enter the back seat of the vehicle while Peavy stayed at the right side of the vehicle constantly looking back and forth, up and down East 116 Street. (Tr. 160) Officer Sowul actually witnessed the hand-to-hand transaction between Jones and Stanton in the vehicle. The duration of the transaction was approximately thirty seconds. (Tr. 160-161) Officer Sowul observed that Peavy never strayed more than a couple of feet away from the vehicle while the hand-to-hand transaction occurred inside the vehicle. (Tr. 160)
{¶ 55} Officer Sowul testified that, based upon his experience as a police officer for six and one-half years and hundreds of arrests during those years of service, of which approximately 20-30 arrests occurred in this area, he believed Peavy was acting as a lookout for Jones (Tr. 161), and after the transaction, Jones and Peavy began walking northbound on East 116.
{¶ 56} The majority expresses that the mere presence of Peavy during this drug transaction, absent some preceding connection with the transaction or conspiracy, is not enough for a conviction for aiding and abetting in the sale of a controlled substance. The majority states Peavy's activities could indicate a chance meeting, a nervous habit, or his knowledge of the existence of an active arrest warrant. However, the majority cites the case of State v. Jacobs, (Sept. 30, 1999) Hancock App. No. 5-99-17, citing State v. Sims (1983), 10 Ohio App.3d 56, 58,460 N.E.2d 672 for the proposition that both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity.
{¶ 57} Peavy's actions are subject to several possible interpretations, and it is entirely possible that the jury, which observed the demeanor of the witnesses, judged the credibility of the witnesses, and weighed the evidence, also could have interpreted the same set of facts differently. However, after considering all the evidence and testimony presented at trial, the jury in this case decided to interpret Peavy's actions as indicative of aiding and abetting drug trafficking. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. I do not find that the jury clearly lost its way; therefore, the verdict of the jury should not be reversed as against the manifest weight of the evidence.