JOURNAL ENTRY AND OPINION
{¶ 1} T.K.[1] appeals his conviction on two counts of felonious assault and one count of aggravated riot with firearm and gang specifications. He claims that the court erred in denying his motion for acquittal and in finding that words he allegedly uttered to encourage shots being fired could be used to support the charges and subsequent finding of delinquency. We affirm in part, reverse in part and remand.
 {¶ 2} The record reveals that on the evening of July 30, 2003, Carolyn Pinson and several family members were gathering at her Bayliss Avenue home for a birthday celebration. Sometime during the course of the party, numerous members of a local gang called "Seven All" arrived at the party in search of Ms. Pinson's nephew, K.B., who had an altercation with several members of the gang the night before.
 {¶ 3} Shortly after the gang's arrival, several shots were fired. Ms. Pinson was shot three times: in her wrist, finger, and upper arm. D.W. was shot in the stomach, and a third boy, J.H., was also shot. Sometime during the assault, T.K. was heard to say, "Shoot the mother f***er." The group then ran from the home, but several boys, including T.K., were later identified as being present at the house.
 {¶ 4} In a statement to police, Ms. Pinson indicated that a boy named Jerry, a.k.a. "T-top," shot her. Although T.K.'s name is contained nowhere in Ms. Pinson's actual police statement, he was indicted on three counts of a crime which if committed by an adult would be felonious assault, R.C. 2903.11(A)(2), and one count of what would be aggravated riot if committed by an adult, R.C. 2917.02; all with one-year and three-year firearm specifications, R.C. 2941.141, R.C. 2941.145, and a gang specification, R.C. 2941.412.
 {¶ 5} Following a trial in April 2004, T.K. was found guilty on two counts of felonious assault, minus any specifications, for the attacks against Ms. Pinson and her nephew, and one count of aggravated riot with a one-year firearm specification and a gang specification. He was sentenced to one year on both counts of felonious assault, sentences to run concurrent, found guilty of aggravated riot, and sentenced to six months on the firearm specification, and an additional year on the gang specification. He appeals in the assignments of error set forth in the appendix to this opinion.
 {¶ 6} In his second assignment of error, T.K. challenges his convictions as against both the sufficiency and manifest weight of the evidence. We review a claim of insufficiency to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Stallings,89 Ohio St.3d 280, 289, 2000-Ohio-164, quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789. We review a manifest weight challenge to determine whether some competent, credible evidence supports the judgment. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. We will reverse a judgment on manifest weight grounds only if it appears that the decision reflects an unreasonable view of the evidence and the result is unjust. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 7} T.K. was convicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2), which states that, "No person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The court found that T.K.'s words were directed to his brother, A.K., finding that he knew that his brother had brought a gun to the house. The court then found that:
"{I}t was the testimony, and it has been the evidence in these casesthat of the one person who handed J.S. a firearm, it was this allegeddelinquent's brother.
 "And so I believe that it isn't [sic] reasonable to infer thathe know that his brother had a weapon, which is why then he coulddirect and shout out, Shoot the MF, Shoot that bitch.
* * *
"So it wasn't general, it was specific. Was it specifically intendedfor Ms. Pinson? I'm not real clear on that. Was it specifically intendedfor D.W.? I'm not clear on that.
 "What I do believe that I am reasonably clear on is that those wordshad meaning for T.K. because he knew that his brother brought a gun tothe scene." (May 10, 2004 Tr. at 14-15).
 {¶ 8} While T.K.'s brother was also identified as present on the night of the shooting, there was no testimony that shots fired by A.K.'s gun were responsible for the harm caused to either Ms. Pinson or to D.W. Each trial witness stated that they were unsure as to who T.K. was directing to shoot. If the judge transferred the intent of the words so as to direct T.K.'s brother to shoot, presumably there must be some indication in the record that these words directed the shots fired by A.K. Instead, the testimony at trial was that A.K. pulled his own weapon from his waistband, handed it to J.S. and that J.S. fired. The judge failed to find that T.K.'s words were directed to J.S. in an attempt to cause harm, a finding that was not made.
 {¶ 9} Although the dissent cites to State v. Jones (Nov. 7, 2002) Cuyahoga App. No. 80737, 2002-Ohio-6045, for the proposition that an intent to harm one person is transferred to the second person and the individual attempting harm is held criminally liable as if he intended to harm and did harm the same person. Jones, however, admitted firing a weapon in the direction of a specified target, he only disputed that the weapon he fired was capable of firing the type of ammunition as identified by the police.
 {¶ 10} Further, as it relates to the assertion that T.K. is also guilty of felonious assault under a theory of aiding an abetting, this emphasis is misplaced. We recognize that under State v. Sims (1983),10 Ohio App.3d 56, "[a] person cannot be convicted of aiding and abetting a principal offender in the commission of an offense in the absence of evidence that the person assisted, incited or encouraged the principal to commit the offense." However, even this definition identifies a "principal" offender. In the instant case, the evidence is so riddled with conflicting testimony that a principal cannot be squarely identified. As reflected above, even the trial court could not determine either the intended target or who the statement was meant to encourage. Instead, the court assigned meaning to the words because presumably T.K.'s brother carried a gun. Such rationale is misplaced.
 {¶ 11} For these reasons, the evidence presented was insufficient to support T.K.'s convictions on charges of felonious assault. T.K.'s conviction of aggravated riot, however, was properly supported in the record.
 {¶ 12} R.C. 2917.02, states in pertinent part:
"(A) No person shall participate with four or more others in a courseof disorderly conduct in violation of section 2917.11 of the RevisedCode: (1) With purpose to commit or facilitate the commission of afelony; (2) With purpose to commit or facilitate the commission of anyoffense of violence; (3) When the offender or any participant to theknowledge of the offender has on or about the offender's or participant'sperson or under the offender's or participant's control, uses, or intendsto use a deadly weapon or dangerous ordnance, as defined in section 2923.11of the Revised Code."
 {¶ 13} At trial, Detective Simms testified that T.K. had been identified by the police as a member of the Seven All gang. (Tr. at 244). Ms. Pinson testified that the night that the Seven All gang arrived at her house, there were approximately thirty kids present and she could identify T.K. as being there. She further testified that he was acting as an instigator and that she saw his lips move as he said, "Shoot the mother f***er." (Tr. at 60, 63, 94, 109). D.W.'s testimony also supported T.K.'s presence at the scene, and although he does not know who T.K. was encouraging to shoot, he claimed that the words were said both before and after the shooting. (Tr. at 152-153, 188, 212).
 {¶ 14} In addition, T.K. was also found guilty of the one-year firearm specification under the principal charge of Aggravated Riot, however, an unarmed accomplice may be convicted and sentenced pursuant to a firearm specification. State v. Hickman (Dec. 13, 2004), Stark App. No. 2003-CA-00408, 2004-Ohio-6760.
 {¶ 15} Based on our resolution on his second assignment of error, we find T.K.'s first assignment of error moot.
 {¶ 16} We affirm the conviction on charges of Aggravated Riot with both firearm and gang specifications, and reverse the convictions on two counts of felonious assault.
Case remanded for proceedings consistent with this opinion.
APPENDIX A: ASSIGNMENTS OF ERROR
 I. THE TRIAL COURT ERRED IN ADJUDICATING MR. KENNAN DELINQUENT ON THECHARGES OF FELONIOUS ASSAULT AND AGGRAVATED RIOTING BECAUSE HIS ALLEGEDLANGUAGE DID NOT AMOUNT TO FIGHTING WORDS AND HIS LANGUAGE WAS PROTECTEDUNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES'CONSTITUTION.
 II. THE TRIAL COURT ERRED WHEN IT OVERRULED MR. KENNAN'S CRIMINAL RULE29 MOTION FOR ACQUITTAL AND ULTIMATELY FOUND MR. KENNAN TO BE ADELINQUENT CHILD BECAUSE THE EVIDENCE PRESENTED BY THE STATE WASINSUFFICIENT TO SUPPORT A CRIMINAL CONVICTION RESULTING IN THE JUDGMENTBEING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Calabrese Jr., J., concurs.
 Gallagher, P.J., dissents (see dissenting opinion attached)
[1] This Court protects the identity of all parties in juvenile court cases.