{¶ 22} Respectfully, I dissent.
 {¶ 23} Initially, I must correct the facts as stated by the majority. First, there is no evidence whatsoever in the record that Conway and Larkins arrived at the scene together in an SUV driven by Larkins. In fact, the only testimony on the issue of Larkin's arrival was given by Detective Dlugolinski, who was the only officer to observe the transaction. Detective Dlugolinski testified that shortly after he parked his car, he saw the informant drive up and park his car. Detective Dlugolinski then heard the informant telephone the target and tell him, "I'm here, I'm ready for the deal." During this conversation, Detective Dlugolinski saw a white Ford Explorer pull up and park on the street between his car and the informant's. As the conversation was ending, co-defendant Conway, wearing a black jacket, walked up from behind Detective Dlugolinski's car, and then Larkins exited the Explorer. The prosecutor specifically questioned Detective Dlugolinski about Conway's appearance at the scene:
 {¶ 24} "THE PROSECUTOR: Detective, can you describe the male that was coming from — it looks like 2303 —
 {¶ 25} "DET. DLUGOLINSKI: He did not come from this area, he came from behind me. I was too busy. I was occupied. My eyes were on this guy right here, and I was listening to the conversation. I knew there was someone else in the area. He appeared from behind me. He came this way, walked right directly in front of my car.
 {¶ 26} "THE PROSECUTOR: He came from the south, but he went in front of your undercover car?
 {¶ 27} "DET. DLUGOLINSKI: Yes, right towards the driveway."
 {¶ 28} Although it may be helpful to the majority's resolution of this case to find that Larkins and Conway arrived together in the SUV, it simply did not happen that way; Detective Dlugolinski testified that only Larkins arrived in the SUV.
 {¶ 29} Next, the majority states that Conway and Larkins fled the scene after "sensing police presence." There is likewise no evidence in the record to support this statement. In fact, Detective Dlugolinski testified that although he gave the signal to the takedown units to move in after the deal was done, they did not appear. He testified that he did not know what caused the delay, but by the time the police appeared on the scene, the informant had returned to his car and Conway and Larkins had already run away. Conway and Larkins may have run down the driveway after the drug deal was over, but there is no evidence they did so because they "sens[ed] police presence."
 {¶ 30} The majority also claims that the handguns found in a boot in the stairwell of Marla Smith's apartment belonged to Larkins. This statement is similarly not supported by the record. Detective Tommy Hall testified that he found a Glock handgun and a small semiautomatic handgun inside a boot, but there was no testimony linking these guns to appellant. Furthermore, no fingerprints were found on the guns. The jury apparently recognized the inadequacies of this evidence: it found Larkins not guilty of the firearm specifications and not guilty of carrying a concealed weapon.
 {¶ 31} The majority also asserts that the guns "were in [Larkins'] possession at the time of the transaction." This assertion is the most troubling. There is, quite simply, no evidence whatsoever in the record that Larkins was carrying guns during the drug deal. The record is clear that no one saw any guns during the drug deal. Detective Dlugolinski, the only officer to observe the transaction, testified that he had a clear view of the transaction, but appellant had his back to him the whole time and he did not see appellant do anything other than "huddle" with Conway and the informant during the transaction. Furthermore, although Detective Todd Clark testified that he learned from the informant after the deal was over that "there was possibly a firearm involved in the transaction," there was no testimony from him or anyone else that Larkins was carrying guns during the deal.
 {¶ 32} With respect to the merits of Larkins' claim that the evidence was insufficient to support his convictions, Larkins was convicted of drug trafficking pursuant to R.C. 2925.03 (A)(1), which provides that "no person shall knowingly * * * sell or offer to sell a controlled substance." He was also convicted of drug possession in violation of R.C. 2925.11(A), which provides that "no person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 33} The State's evidence demonstrated that Larkins was present during the alleged drug transaction. The State also produced evidence that the informant had no drugs on his person prior to the transaction, but had 60 grams of crack cocaine after he met with Conway and Larkins, and that the informant gave Conway $1,800, which was never recovered. Furthermore, the State presented evidence that Larkins ran away after the alleged drug deal and that he forced his way into Marla Smith's apartment while carrying two undescribed and unidentified guns.
 {¶ 34} Nevertheless, the State presented no evidence other than Larkins' mere presence at the scene to demonstrate either that he possessed drugs or that he knowingly sold them to the informant. Detective Dlugolinski testified that the informant called Conway to set up the deal and that he saw the informant give Conway the money. Significantly, Detective Dlugolinski, the "eyes and ears" of the operation, admitted that he did not see Larkins do anything other than "huddle" with the informant and Conway as they stood in the driveway of 2280 East 95th Street during the drug deal. Larkins' fingerprints were not found on the baggie containing the crack cocaine that was given to the informant. No money or drugs were found on Larkins' person when he was apprehended. Furthermore, there were no fingerprints on the guns linking Larkins to the firearms found in the basement of Smith's apartment and no testimony from Detective Dlugolinski that he saw any firearms during the transaction.
 {¶ 35} The State theorized at trial that Larkins "aided and abetted" Conway as "the muscle, with the guns involved in this case." However, to sustain a conviction for aiding and abetting, the State must prove "two elements: an act on the part of the defendant contributing to the execution of a crime and the intent to aid in its commission." State v. Miller, Cuyahoga App. No. 81608, 2003-Ohio-1168; State v. Sims (1983), 10 Ohio App.3d 56,59. Mere presence during the commission of a crime, however, does not constitute aiding and abetting. State v. Peavy, Cuyahoga App. No. 80480, 2002-Ohio-5067, at ¶ 32, citing State v.Jacobs, Hancock App. No. 5-99-17, 1999-Ohio-899. Being present, absent some preceding connection with the transaction or conspiracy is not aiding and abetting. State v. Dunn, Cuyahoga App. No. 83754, 2004-Ohio-4350, at ¶ 20, citing Sims, supra. Furthermore, "`mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act.'" Peavy,
supra, quoting Sims, supra, at 59. Here, the State offered no evidence of any affirmative act by Larkins contributing to the drug sale other than his presence during the transaction.
 {¶ 36} The majority's conclusion that appellant somehow "facilitated the transaction with his presence" flies in the face of extensive case law from this district that requires some overt act beyond mere presence. If the majority means to imply that Larkins facilitated the transaction by brandishing weapons, as discussed above, there is no evidence in the record that he was carrying weapons during the drug deal. Likewise, there is no evidence that the weapons found in Smith's apartment belonged to Larkins.
 {¶ 37} The majority also erroneously asserts that Larkins was somehow in "constructive possession" of the drugs exchanged during the deal merely because he was present during the transaction. The majority cites no cases to support this conclusion, however; presumably because the case law is clear that to find constructive possession, there must be some evidence that the individual exercised "dominion and control" over an object, even though that object was not within his immediate physical possession. State v. Hankerson (1982),70 Ohio St.2d 87, at the syllabus. Here, there is no evidence in the record that Larkins did anything to exercise "dominion and control" over the drugs.
 {¶ 38} In short, the majority concludes that Larkins possessed and sold drugs to the informant because he was in the huddle, ran away when the deal was over, and later attempted to evade the police. Even construing this evidence in a light most favorable to the prosecution, without more, this evidence is insufficient to show that Larkins was guilty of drug trafficking and drug possession. Because there was insufficient evidence to support Larkins' convictions, I would find that the trial court erred in denying his Crim.R. 29(A) motion for acquittal.