{¶ 36} I concur in judgment only in Case No. 87123 (lower court Case No. CR-452824), wherein defendant was found guilty of misuse of a credit card, and I dissent from the majority decision in Case No. 87112 (lower court Case No. CR4-52262), wherein the majority vacates defendant's conviction for receiving stolen property/license plates.
 {¶ 37} In Case No. 87112, the defendant, Antwone Garrett, was convicted after a bench trial of receiving stolen property; to wit, license plates belonging to Emzie Wright.
 {¶ 38} At trial, Mr. Wright testified that shortly before May 5, 2004, his birthday, he registered his 1994 Oldsmobile Achieva and obtained license plates for that car. The following morning, after having attached the plates to his car, he came out of the house and discovered that the plates had been removed. He testified that he promptly reported this theft to the police. Mr. Wright testified further that he had not given anyone authority to remove the plates from his vehicle.
 {¶ 39} Officer Sowul of the Cleveland Police Department testified at trial that on May 3, 2004, at approximately 6:00 p.m., he saw the defendant, Antwone Garrett, who was driving a Range Rover, make an illegal turn in the City of Cleveland. He testified that he followed the vehicle, pulled up behind it, and entered the plate number into the computer. The computer revealed that the plate was registered to Emzie Wright and had been reported stolen. The plate in question was registered to a 1994 Oldsmobile Achieva. The number on the plate was DAC 1707. Upon questioning the defendant about the plates, the defendant claimed that he "bought them from some crackhead."
 {¶ 40} The majority cites State v. Sims (1983),10 Ohio App.3d 56, to support its conclusion that there was insufficient evidence to sustain Garrett's conviction for receiving stolen property. In Sims, this court held that "a conviction for a theft-related offense cannot stand where a necessary element of the crime is demonstrated solely by reference to hearsay information on a police computer printout indicating that certain property was stolen." Id. at 58. (Emphasis added.) In Sims,
however, the rightful owner of the plates was never called to testify. The State attempted to prove its entire case with a computer printout. Here, the rightful owner, Emzie Wright, testified that he purchased plates for a 1994 Oldsmobile Achieva immediately prior to his birthday on May 5, 2004, attached them to his vehicle, gave no one permission to remove the plates, and immediately upon discovering them missing, reported them stolen.
 {¶ 41} To sustain a conviction for receiving stolen property, specifically license plates, the burden of proof was on the State to prove, as set forth in the indictment, that: "on or about May 3, 2004, in Cuyahoga County, Ohio, Antwone Garrett, a/k/a Jesse Perry, did retain a motor vehicle identification license plate, the property of Emzie Wright, knowing or having reasonable cause to believe that it had been obtained through the commission of a theft offense."
 {¶ 42} There was direct evidence, through the testimony of Emzie Wright, that his license plates were stolen from his car in Cleveland, Ohio shortly before May 5, 2004, and that the plates were registered to a 1994 Oldsmobile Achieva. There was further direct evidence that Mr. Wright did not give anyone permission to take these plates from his car.
 {¶ 43} Furthermore, there was direct evidence through the testimony of Officer Sowul that on May 3, 2004, he stopped a Range Rover, in the City of Cleveland, questioned the driver (later identifed as Antwone Garrett) about the plates, and was told by Garrett that he "bought them from some crackhead." A computer verified that the plates involved belonged to Emzie Wright, were registered to a 1994 Oldsmobile Achieva, and were reported stolen.
 {¶ 44} I cannot conceive of a more perfectly proved case. Testimony regarding the issue was more than sufficient to prove the receipt of stolen property. The computer information only confirmed the testimony of Emzie Wright that the plates on Antwone Garrett's car were his. The computer printout was clearly not the "entire case," as it was in Sims.
 {¶ 45} Finally, if there were any question regarding defendant Garrett's reasonable cause to believe that the plates had been obtained through the commission of a theft offense, it was resolved when he told Officer Sowul that he "bought them from some crackhead." Plates are purchased from the Bureau of Motor Vehicles — not "crackheads." A finder of fact could reasonably infer that a person who purchases license plates from a "crackhead" would have reason to know they were stolen.
 {¶ 46} Despite the majority's attempt to distinguish Statev. Wilson, Cuyahoga App. No. 87205, 2006-Ohio-4108, it is apparent that this case is identical to it. In Wilson, the police stopped a Mercury Topaz when a license plate check revealed that the plate was registered to a Mazda. When questioned, the defendant said the plate had been given to him by "Tony." At trial, the owner of the Mazda to which the plate in issue was registered testified that she did not know the plate was stolen until the prosecutor's office called her, and further, that she had not given anyone permission to have or display her plate.
 {¶ 47} In affirming the defendant's conviction for receiving stolen property, this court held:
 {¶ 48} "[A]t trial officers * * * testified that the police computer revealed that the license plate number on the car defendant was sitting in did not match the car. Ms. Lahodny [the plate owner] testified that she owned the Mazda to which the license plate found on defendant's car was registered to and that she did not give defendant permission to use or display the license plate. Based upon this evidence, we find sufficientevidence was presented to establish defendant received andretained stolen property." Id. (Emphasis added.)
 {¶ 49} The majority attempts to distinguish Wilson from this case by alleging that, in Wilson, the plates were introduced into evidence at trial — a fact that nowhere appears in the opinion cited. Even if this fact were true, I am at a loss to discern what difference a courtroom identification of the plate would make.
 {¶ 50} The holding of the majority is, in essence, that the finder of fact cannot use logic to infer facts not directly in evidence. Here, Mr. Wright testified that he had purchased license plates in his name for an Achieva; that shortly after they were affixed to his car, they were removed by a person or persons unknown; that he gave no one permission to remove those plates, and that he promptly made a stolen license plate report. Officer Sowul testified that shortly after this report was made, he ran the plates to a Range Rover because he saw that vehicle make an illegal turn. The plates came back registered to an Achieva, owned by Emzie Wright, and reported stolen. When the defendant was questioned by Officer Sowul, he told him that he "bought the plates from some crackhead." There is clearly ample, direct evidence from which a trier of fact could conclude that the defendant possessed license plates stolen from Emzie Wright.
 {¶ 51} Accordingly, I would affirm Garrett's conviction in Case No. 87112.
 APPENDIX
"I. Defendant was denied due process of law when the court overruled defendant's motion to dismiss by reason of a denial of a speedy trial in Case No. CR-452262, Court of Appeals Case No. 87112."