JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a jury verdict that found appellant Howard S. Miller guilty of drug possession and drug trafficking, following trial before Judge Brian J. Corrigan. Miller claims there was insufficient evidence to support his convictions, the verdicts were against the manifest weight of the evidence, and permitting the police to speculate what his role would have been in a drug transaction violated evidentiary rules. We affirm his conviction on possession of cocaine in an amount less than one gram and reverse the conviction for drug trafficking.
 {¶ 2} From the record we glean the following: On March 2, 2001, Cuyahoga Metropolitan Housing Authority ("CMHA") Detectives David Thompson and Paul Hermensky met with a confidential informant ("CI") who agreed to participate in a controlled buy of crack cocaine from Reginald Cromity, a suspected drug dealer. That evening, the detectives had the CI use his cell phone to page Cromity, who returned the call from his own cell phone. The CI ordered one-half ounce[1] of crack cocaine and agreed to pay $450 for it. In an unmarked car, the detectives and the CI drove to Wilson Apartments, CMHA Estate at 1919 West 55th Street, near Chester Avenue. The transaction was to take place in the parking lot of the building and the detectives parked across the street so that they could observe it.
 {¶ 3} Cromity arrived at the parking lot less than ten minutes after the call in a red Ford Mustang convertible, which the detectives verified was registered in Cromity's name. Miller was seated in the passenger seat of car; the CI stated that he did not know who Cromity's passenger was or why he was there. Both detectives stated that they watched the two men nervously looking around in all directions, as if to scan their immediate area for either the CI or law enforcement. A Cleveland Police Department zone car stopped by the entrance to the complex, and Cromity, who had been waiting in the lot for only about two minutes, drove away.
 {¶ 4} Cromity immediately called the CI who, with instructions from the detectives, arranged another meeting at the Church Plaza, a shopping center at East 79th Street and Euclid Avenue. The detectives and their passenger drove to the shopping center but, because there were so many people at this location, they called off the buy. Det. Thompson had requested that CMHA Detective Randy Ramsey come to Church Plaza and, when Cromity, who had just arrived, attempted to leave, Detectives Ramsey and Thompson used their cars to block him in.[2] With his weapon drawn, Det. Ramsey ordered Cromity out of the car and detained him, and then Det. Hermensky ordered Miller out. Both detectives stated that the interior of the car contained a strong odor of burnt marijuana.
 {¶ 5} The detectives searched Cromity's car and found two rocks of crack cocaine, later found to weigh 0.9 grams, and a small quantity of marijuana in a plastic baggie in plain view near to the gearshift in the central console area of the car. Further search revealed two approximately quarter-ounce pieces of crack cocaine in a baggie, hidden underneath a cup holder in the central console, and Cromity's pager and cell phone.
 {¶ 6} Cromity was arrested at the scene, while Miller was "field booked"[3] and released. He was indicted on one count of possession of crack cocaine in an amount exceeding ten grams but less than twenty five grams,[4] one count of trafficking in cocaine,[5] one count of preparation of drugs for sale,[6] and one count of possession of criminal tools.[7] The preparation of drugs for sale and possession of criminal tools counts were dismissed immediately before trial.
 {¶ 7} The State presented the testimony of Detectives Thompson, Hermensky and Ramsey to describe the facts of the incident, and that of Tracy Kramer, a scientific examiner at the Ohio Bureau of Criminal Investigation, to verify the analysis and weights of the pieces of crack cocaine that had been seized. The jury returned a not guilty verdict on the possession of ten- to twenty-five grams of crack cocaine, and guilty verdicts on a lesser included charge of possession of cocaine, in an amount less than one gram, and the trafficking count. Miller was given a two-year prison term on the trafficking charge and a nine-month prison term on the possession charge, to be run concurrently with each other and a series of prison terms imposed for domestic violence convictions in other cases. He was not advised that post-release control could be part of his sentence or the penalties should he violate any of its terms and it is not part of his sentence.[8]
 I {¶ 8} In the first of Miller's three assignments of error, he asserts there was insufficient evidence presented to justify the jury's determination that he possessed cocaine or committed trafficking, beyond a reasonable doubt. Whether the evidence is legally sufficient to sustain a verdict is a question of law, reviewed de novo by a reviewing court.[9]
According to Crim. R. 29,
 {¶ 9} "The court on motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction on such offense or offenses. * * *"
 {¶ 10} Whether phrased in terms of a Crim. R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[10] A conviction based on legally insufficient evidence constitutes a denial of due process.[11] Because the question of sufficiency of the evidence presents a question of law, it does not allow the reviewing court to weigh the evidence.[12]
 {¶ 11} R.C. 2925.11 prohibits knowingly possessing controlled substances, including cocaine. "`Possess' or `possession' means having control over a thing or substance* * *."[13] Possession may be actual or constructive.[14] Constructive possession requires some evidence that the person exercised or has the power to exercise dominion or control over the object, even though that object may not be within his immediate physical possession.[15] Furthermore, two or more persons may jointly possess an item.[16]
 {¶ 12} The uncontradicted evidence in this case reflects that, when the detectives surrounded Cromity's car and ordered him and Miller out of it, two small rocks of crack cocaine were on the central console of the automobile; Kramer testified that, in the aggregate, these pieces were crack cocaine and weighed 0.9 grams. It was also undisputed that, in a small car such as a Mustang, should he have wished, Miller could have easily reached for and taken the pieces. Given the power to exercise dominion or ownership over these drugs, and the obvious inference that he knew they were there because they were in plain view, we find that, if the jury accepted the undisputed testimony of the officers about these relevant facts, it could have found him guilty beyond a reasonable doubt of possessing that quantity of crack cocaine.
 {¶ 13} Under R.C. 2925.03(A)(1), a person engages in trafficking of drugs upon knowingly selling or offering to sell a controlled substance. R.C. 2923.03 provides:
 {¶ 14} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 15} "* * *
 {¶ 16} "(2) Aid or abet another in committing the offense;
 {¶ 17} "* * *
 {¶ 18} "(C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 (Attempt)of the Revised Code.
 {¶ 19} "* * *
 {¶ 20} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 21} To aid means to help, assist or strengthen; to abet means to encourage, counsel, incite or assist.[17] "* * * [A] defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity.' R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense."[18]
 {¶ 22} This court, in State v. Peavy,[19] recently summarized the law as it relates to the role of an aider or abettor and what must be proven by the State to establish that a defendant did, in fact, aid or abet another in the commission of a crime:
 {¶ 23} "Aiding and abetting contains two basic elements: an act on the part of the defendant contributing to the execution of a crime and the intent to aid in its commission.[20] Both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity.[21] Mere presence during the commission of a crime, however, does not necessarily amount to being an accomplice.[22]
Indeed, `[m]ere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act.'[23] Being present during the commission of a crime, absent some preceding connection with the transaction or conspiracy is not aiding or abetting."[24] However, criminal intent can be inferred from an accused's presence, companionship and conduct both before and after the offense.[25]
 {¶ 24} At trial, the State attempted to show that Miller had aided or abetted Cromity in trafficking when he acted as a "look out," because he looked around when Cromity parked his car in the lot at East 55th Street and Chester Avenue. While Detectives Thompson and Hermensky described Miller as nervously looking around as he sat in the car and, in their experience, such behavior may have been indicative of acting as a participant in a sale of controlled substances, it must be remembered that a no controlled substance-sale occurred under the facts of this case.
 {¶ 25} The trafficking alleged at trial consisted of Cromity responding to the CI's page and offering to sell the specified quantity of crack cocaine to the CI. Cromity drove to the meeting places in his own car, and used his pager and cell phone to attempt to set up a drug transaction. At best, in alleging that Miller participated in a crime by acting as a look-out, the State presented evidence that amounted to rather tenuous proof that he engaged in an attempted trafficking, because no sale was consummated and there was no proof introduced that Miller made any offer to sell anything. No attempt was alleged, and no guilty finding was predicated on any attempt charge. Accordingly, the State did not, in any circumstance, prove beyond a reasonable doubt that Miller engaged in actual trafficking based on a look-out theory.
 {¶ 26} In the alternative, Detectives Thompson and Hermensky contended at trial that Miller may have accompanied Cromity to provide security for the exchange or, if the sale took place, to participate in it. Each claimed that, based on their experiences as narcotics detectives, mid-level drug dealers, such as they contended Cromity to be, have recently shown a preference for bringing associates, rather than weapons, to drug deals as protection. They explained this trend by pointing to the increased criminal penalties for using or possessing a firearm in the course of committing a felony, and that the strength-in-numbers approach provides the requisite security.
 {¶ 27} Other than this theory, the State presented no evidence that Miller was a participant in Cromity's trafficking except his presence in the car. There was no evidentiary basis upon which to conclude that his proximity was for a criminal purpose. As we noted in State v.Peavy, supra, to properly convict a defendant of complicity, the State must introduce evidence that the accused affirmatively acted to effect the crime. Here, no drug sale took place and the State presented no evidence that Miller communicated with any other person connected to these events. His presence in the car, and the detectives' conjecture that he was, therefore, a bodyguard, cannot provide a jury with sufficient evidence upon which it could have based a guilty verdict for trafficking. This assignment of error has merit.
 II {¶ 28} Miller argues that the guilty verdicts are against the manifest weight of the evidence. In evaluating a manifest weight challenge, this court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has "lost its way."[26] This power is subject to strict and narrow constraints.
 {¶ 29} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief'" * * *
 {¶ 30} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[27]
 {¶ 31} Having found that Miller's trafficking conviction was not supported by sufficient evidence as a matter of law, this assignment of error on that count is moot. We review only Miller's possession conviction under this assignment of error.
 {¶ 32} We discussed supra, that the possession of less than one gram of cocaine was based on sufficient evidence. We reiterate that the factual underpinning of this charge is straightforward and uncontested: Miller was seated inches away from, and had ready access to, two rocks of crack cocaine that were in plain view. Any jury would have been virtually compelled to find that he had constructive possession of the drugs located in the center console of the car, and the jury did not lose its way. This assignment of error has no merit.
 III {¶ 33} Miller contends that it was error for the judge to permit the detectives to testify that persons like him, who accompany drug dealers, are guards or some form of protection to prove that he was an aider or abettor to Cromity's trafficking. Even assuming error, resolution of this assignment is meaningless because we determined that Miller's first assignment of error reverses the trafficking conviction. This assignment of error is moot.
Judgment affirmed in part, reversed in part.
JAMES J. SWEENEY, J., and TIMOTHY E. MCMONAGLE, J., CONCUR.
[1] 14.0 grams.
[2] The transcript of proceedings does not indicate if the CI was still with Detectives Thompson and Hermensky at this time, or had exited their car before Cromity and Miller were stopped.
[3] "Field Booking" constituted securing Miller's identification, date of birth and address so that the detectives could present him as a suspect before the grand jury.
[4] In violation of R.C. 2925.11.
[5] In violation of R.C. 2925.03.
[6] In violation of R.C. 2925.03.
[7] In violation of R.C. 2923.34.
[8] R.C. 2929.19(B)(3). Contrary to what occurred at the sentencing hearing, the journal entry claims to impose the maximum post-release control provided by law, court costs of over $1,400, and advisement of appellate rights.
[9] State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148.
[10] See State v. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52,State v. Jenks (1991), 61 Ohio St.3d 259.
[11] Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220,72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
[12] State v. Martin (1983), 20 Ohio App.3d 172, 175.
[13] R.C. 2925.01(K).
[14] State v. Haynes (1971), 25 Ohio St.2d 264, 269-270,267 N.E.2d 787.
[15] State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus; State v.Wolery (1976), 46 Ohio St.2d 316, 329.
[16] State v. Mann (1993), 93 Ohio App.3d 301, 308; see, also, Statev. Correa, (May 15, 1997), Cuyahoga App. No. 70744.
[17] See 4 Ohio Jury Instructions (2000)573, Sections 523.03(8) and 523.03(9).
[18] State v. Herring, 94 Ohio St.3d 246, 251, 2002 Ohio 796, (internal cite omitted).
[19] (Sept. 26, 2002), Cuyahoga App. No. 80480, 2002-Ohio-5067.
[20] State v. Jacobs, (Sept. 30, 1999), Hancock App. No. 5-99-17, citing State v. Sims (1983), 10 Ohio App.3d 56, 58.
[21] Jacobs, supra, citing State v. Cartellone (1981), 3 Ohio App.3d 145,150.
[22] Jacobs, supra, citing State v. Widner (1982), 69 Ohio St.2d 267,269.
[23] State v. Sims (1983), 10 Ohio App.3d at 59. (Internal citation omitted.)
[24] State v. Peavy, supra, citing Sims, supra.
[25] Cartellone, supra.
[26] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
[27] State v. Thompkins, supra at 387, 1997-Ohio-52, 678 N.E.2d 541, (internal cites omitted).