OPINION
{¶ 1} Defendant-Appellant Michael Mattison appeals from his conviction and sentence for Felonious Assault with a Deadly Weapon and an accompanying Firearm Specification. Mattison contends that his conviction is against the manifest weight of the evidence, that his trial counsel was ineffective, and that there is an insufficient basis in this record for more than a minimal sentence. Based upon our review of the evidence in the record, we conclude that Mattison's conviction is not against the manifest weight of the evidence. We further conclude that the record does not support Mattison's contention that he received ineffective assistance of counsel. Finally, we conclude that the record supports the trial court's decision to impose more than a minimal sentence for the offense. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 2} Early one afternoon in December, 2003, Derrick Tolbert was sleeping on his living room couch. When he woke up, he found himself alone with his daughter and his girlfriend's two young children, but his girlfriend was gone. Tolbert got ready for work and called his aunt to watch the children. As Tolbert was leaving with the children in his car, he saw his girlfriend, Michael Pounds, sitting in a car talking to a man that he did not know.
 {¶ 3} Tolbert parked next to the car, got out, and opened the passenger door. He pulled Pounds out of the car, and the two argued. Tolbert pushed Pounds, and she stumbled. The man, who Tolbert later learned was Pounds' ex-boyfriend, Nathan Smyth, exchanged words with Tolbert and left the scene. Tolbert and Pounds went into their apartment. Their neighbor, Mark Martin, witnessed the entire exchange from his window.
 {¶ 4} Tolbert went to work, returning home around 9:00 p.m. When he returned, he and Pounds decided to leave the apartment with the children. Tolbert took the youngest child out to the car that was parked behind the building. As Tolbert was buckling the baby into her car seat, he got a call on his cell phone warning him to watch out because someone was coming around the building carrying a gun. Tolbert put the phone down and backed out of the car. To his left, Tolbert saw a man wearing a hooded sweatshirt at the corner of the building, whom he later learned was Mattison. Tolbert heard leaves rustling on his right. As he turned, he was hit in the forehead with something "really hard, like steel," and he fell back into the car.
 {¶ 5} At first Tolbert only saw that the man who hit him was wearing a jacket of three or four different colors, with a white t-shirt underneath. However, he soon recognized him as Smyth. After Smyth hit Tolbert, he said "Here cuz," and passed the gun to Mattison, who stood with the gun pointed at the ground. Smyth began beating Tolbert. When Tolbert tried to fight back, he felt the gun pushed against the back of his head. Tolbert feared for himself and for his baby daughter, who was right next to him in her car seat. Tolbert had never met Mattison before and did not know what Mattison would do with the gun, so Tolbert stopped trying to fight back. Once again, Mark Martin was watching the altercation from his window. As soon as he saw the gun, he called the police.
 {¶ 6} As Smyth was hitting Tolbert, Pounds came out of the apartment and tried to stop the beating, but Smyth ignored her. When Smyth finally stopped hitting him, Tolbert tried to climb between the seats to get in the front seat and drive away, but Smyth took the keys from the ignition and threw them. Smyth then took two cell phones, the faceplate from the car stereo, and a DVD player from the car. He told Tolbert that if he wanted his property back, he would have to pay for it.
 {¶ 7} Smyth and Mattison saw a police cruiser drive by, and they ran in the back door of the apartment, through the apartment, and out the front door. Pounds and Tolbert followed them. Inside, Tolbert saw the two men coming back in the front door. The group ended up in the kitchen where Mattison and Smyth returned the property that they had taken from the car. Smyth tried to smooth over things, asking Tolbert if everything was "cool." Hoping to get the men to leave, Tolbert agreed that everything had been a misunderstanding. Smyth and Mattison left through the front door.
 {¶ 8} Three officers responded to Martin's call. They promptly located Smyth and Mattison, handcuffed them, and put them in their cruisers. Officers Cleaver and Letlow went into the apartment to investigate, and Tolbert told them that Mattison had a gun. The officers found the gun, which Tolbert identified at trial, in a cable box on the side of the next building.
 {¶ 9} Detective Krista Gorsuch interviewed Mattison after his arrest. Mattison claimed that he had just been trying to break up a fight between Tolbert and Smyth, but he could provide very few details. Mattison asked the detective to vouch for him with the prosecutor because he had recently been in trouble for some other things. The detective declined, detailing her reasons for not believing Mattison's story. Mattison responded by saying, "Well, if there was a gun, it wasn't for the reason you think."
 {¶ 10} A grand jury indicted Mattison on one count of Felonious Assault with a Deadly Weapon; one count of Aggravated Burglary; and one count of Aggravated Robbery, all with Firearm Specifications. The State dismissed the Aggravated Burglary charge and took the remaining charges to trial. The jury found Mattison not guilty of Aggravated Robbery, but guilty of Felonious Assault and the Firearm Specification. The trial court sentenced Mattison to three years for the Felonious Assault conviction and three years for the gun specification. From his conviction and sentence, Mattison appeals.
 II {¶ 11} Mattison's First Assignment of Error is as follows:
 {¶ 12} "The verdict of the trial court was against the manifest weight of the evidence."
 {¶ 13} In his First Assignment of Error, Mattison argues that his conviction is against the manifest weight of the evidence because the State failed to prove that he was the one, not Smyth, who hit, shot, or struck Tolbert. Because there is credible evidence in the record that Mattison aided and abetted Smyth in the beating of Tolbert, we conclude that it is immaterial whether the State succeeded in proving, beyond reasonable doubt, that Mattison personally hit, shot, or struck Tolbert.
 {¶ 14} When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 15} Under R.C. § 2923.03, one who aids or abets another in committing an offense "shall be prosecuted and punished as if he were a principal offender." Here, although the language in the indictment is framed to indicate that Mattison was a principal offender, there is evidence in the record to support a finding that he aided and abetted Smyth in the commission of the offense, and the jury was instructed on aiding and abetting. Thus, the State needed to prove that Mattison aided and abetted Smyth in the felonious assault on Tolbert.
 {¶ 16} Aiding and abetting means inciting or encouraging. See, e.g.,State v. Sims (1983), 10 Ohio App.3d 56, 58, 460 N.E.2d 672. Mere approval is not enough. Instead, the aider and abetter "knowingly does something which he ought not to do, * * * which assists or tends in some way to affect the doing of the thing which the law forbids; in order to aid or abet, whether by words, acts, encouragement, support or presence, there must be more than a failure to object unless one is under a legal duty to object." State v. Stepp (1997), 117 Ohio App.3d 561, 568,690 N.E.2d 1342.
 {¶ 17} The evidence here supports the jury's conclusion that Mattison aided and abetted Smyth in the assault upon Tolbert. Smyth and Mattison arrived at Tolbert's home together, and they approached Tolbert from two different directions, cutting him off from an escape route. After Smyth hit Tolbert in the head, he gave the gun to Mattison, who held the gun and served as a lookout. When Tolbert tried to fight back against Smyth, Mattison put the gun to Tolbert's head, causing Tolbert to stop trying to protect himself. While Mattison did not say anything as he pressed the gun to Tolbert's head, the implied message was clear. Mattison's actions were not limited to mere acquiescence or association; his actions constituted active facilitation of Tolbert's beating at Smyth's hands. In short, a reasonable jury could find, from the evidence in this record, that Mattison and Smyth were acting in concert to administer a severe beating upon Tolbert.
 {¶ 18} For these reasons, we cannot say that it is patently apparent that the jury clearly lost its way, and we will not disturb the verdict. Mattison's First Assignment of Error is overruled.
 III {¶ 19} Mattison's Second Assignment of Error is as follows:
 {¶ 20} "The appellant was denied effective assistance of counsel."
 {¶ 21} Mattison contends that his trial counsel was ineffective for failing to object to testimony regarding prior bad acts and prior criminal conduct. We conclude that counsel acted within his professional discretion in choosing not to object to the testimony, and that Mattison has failed to demonstrate that counsel's decision prejudiced his defense.
 {¶ 22} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 23} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment.State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 24} Specifically, Mattison insists that his counsel should have objected when the State introduced testimony from Detective Gorsuch that Mattison told her that he had "recently been in some trouble for some other things." However, no details were offered regarding what kind of trouble Mattison was in or what he had done. Under these circumstances it is likely that counsel chose not to object in order not to draw the jury's attention to Mattison's statement. An appellate court is not well situated to second-guess trial counsel's professional judgment in these situations. Trial counsel is present and can evaluate the impact that a statement of this kind is having, or is likely to have, upon the jury. Experienced trial counsel will often be reluctant to draw the jury's attention to the offending testimony by objecting to it, thereby also giving the jury the impression that it relates to facts, not in evidence, that the defendant wants to keep the jury from hearing. We will not second-guess Mattison's trial counsel's decision not to object to Detective Gorsuch's statement. Accordingly, Mattison's Second Assignment of Error is overruled.
 IV {¶ 25} Mattison's Third Assignment of Error is as follows:
 {¶ 26} "The trial court erred in not considering all of the relevant sentencing factors as well as not imposing the minimum sentence."
 {¶ 27} Mattison contends that the trial court failed to consider all of the relevant sentencing factors and that the trial court erred in imposing more than a minimum sentence or probation. We begin by noting that an appellate court reviewing a sentence imposed by the trial court may "increase, reduce, or otherwise modify the sentence" only if it finds by clear and convincing evidence that "the record does not support the sentencing court's findings" or "that the sentence is otherwise contrary to law." R.C. § 2953.08(G)(2)(a) (b). We conclude that the record in this case does support the trial court's findings.
 {¶ 28} A prison term is presumed for a felony of the first or second degree. R.C. § 2929.13(D). A minimum sentence should be given unless the offender was serving a prison term at the time of the offense, previously served a prison term, or the court finds on the record that the shortest prison term would demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender and others. R.C. § 2929.13(B).
 {¶ 29} When a court imposes sentence on a felony offender, the court must consider the overriding purposes of felony sentencing to protect the public from future crime by the offender and others and to punish the offender. R.C. § 2929.11(A). See, State v. Arnett, 88 Ohio St.3d 208,2000-Ohio-302. The court must also consider the seriousness and recidivism factors set forth in R.C. § 2929.12. Id. However, the section does not require a sentencing judge to use specific language, but instead a rote recitation that the court considered the applicable factors is sufficient. Id.
 {¶ 30} The trial court judge reviewed five letters submitted on Mattison's behalf, a letter from Mattison, the parties' sentencing memoranda, the pre-sentence investigation report, and the comments of the assistant prosecuting attorney. The judge also stated that he considered the principles and purposes of sentencing. Although Mattison was a first-time adult felony offender, the judge found that the facts of the case were sufficient to overcome the presumption for the minimum prison term, because Mattison used a loaded gun, which he pointed at the victim. The trial court found that a minimum prison term would demean the seriousness of Mattison's conduct, that it would not adequately protect the public, or both. Accordingly, the trial court ordered more than a minimum sentence. Because the trial court's findings are supported by clear and convincing evidence in the record, Mattison's Third Assignment of Error is overruled.
 V {¶ 31} All of Mattison's assignments of error having been overruled, the judgment of the trial court is affirmed.
 a. . . . . . . . . . . . . .
Wolff and Grady, JJ., concur.