JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Cleveland Gresham, appeals his felonious assault conviction. For the reasons that follow, we affirm.
 {¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury on the following counts: count one, attempted murder of April Jones; count two, felonious assault (knowingly cause serious physical harm to April Jones); count three, felonious assault (knowingly cause or attempt to cause physical harm to April Jones by means of a deadly weapon or dangerous ordnance); and count four, felonious assault (knowingly cause or attempt to cause physical harm to Alberta Jones by means of a deadly weapon or dangerous ordnance). Counts one through four all contained one-and three-year firearm specifications. Appellant additionally was *Page 2 
indicted in count six[1] of having a weapon while under disability. The State's theory of the case was that appellant acted in complicity with his co-defendant.
 {¶ 3} Appellant waived his right to a jury trial, and the case proceeded to trial before the court. At the conclusion of the State's case, appellant made a Crim.R. 29 motion for acquittal. The court granted the motion as to counts one (attempted murder of April Jones) and four (felonious assault — knowingly cause or attempt to cause physical harm to Alberta Jones by means of a deadly weapon or dangerous ordnance). Appellant did not present testimony. The court found appellant guilty of count three, felonious assault (knowingly cause or attempt to cause physical harm to April Jones by means of a deadly weapon or dangerous ordnance) and the accompanying one-and three-year firearm specifications. He was found not guilty of count two, felonious assault (knowingly cause serious physical harm to April Jones), and count six, having a weapon while under a disability. Appellant was sentenced to a merged three-year term on the firearm specifications, to be served consecutively to a two-year term on the underlying felonious assault.
 {¶ 4} The testimony and evidence at trial demonstrated that the victim, April Jones, was shot five times by co-defendant Travis Groce, and suffered serious physical injuries. Groce and appellant were acquaintances, and Groce had dated April. April and Groce had broken up, but Groce had been driving a car belonging to *Page 3 
April's grandfather and also had April's cell phone. She called Groce and asked him for the keys to the car and her cell phone; he told her that she could retrieve them from him. The following day after work, April, her sister Alberta Jones, and Alberta's friend Kia, went to Groce's residence. Alberta was five or six months pregnant at the time.
 {¶ 5} Upon seeing Groce, Alberta approached him, grabbed his shirt and demanded return of the keys and phone. At this point, appellant walked by, saw Groce, Alberta and April arguing, and told Groce that he should return April's possessions. The argument continued and appellant left the area.
 {¶ 6} At some point during the argument April had a knife that she displayed. She eventually put the knife away, however. April testified that appellant was not in the area when she displayed the knife.
 {¶ 7} Groce was "hollering" that April might kill him, and that if she did, someone should kill her. Around this time,[2] appellant returned to the scene and again told Groce to return April's possessions to her. Groce then directed appellant to retrieve his gun from an area where garbage was stored. Appellant went to the area and retrieved the gun.
 {¶ 8} After retrieving the gun, appellant returned to the area, where the argument was still continuing. April and Alberta struggled with appellant in an *Page 4 
attempt to prevent him from handing the gun to Groce. Appellant was able, however, to give the gun to Groce, who immediately shot April.
 {¶ 9} In his first assignment of error, appellant argues that the evidence was insufficient for a finding of aiding and abetting felonious assault. In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence.
 {¶ 10} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. Id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v.Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668. In the simplest sense, the difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion.Thompkins at 390 (Cook, J., concurring).
 {¶ 11} Sufficiency is a question of law. Id. at 386; Smith at 113. If the State's evidence is found to have been insufficient as a matter of law, then on appeal, the court may reverse the trial court.Thompkins at paragraph three of the syllabus, citing Section 3(B)(3), Article IV, Ohio Constitution. Under this construct, the State would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury.Thompkins at 386; Smith at 113. *Page 5 
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." Id. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 13} Manifest weight is a question of fact. Thompkins at 387. If the trial court's judgment is found to have been against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id . Under this construct, the appellate court "sits as the `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." Id.
 {¶ 14} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." Thompkins at 387. "A court reviewing questions of weight is not required to view the evidence in a light most *Page 6 
favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. See, also, id. at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 15} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins at 388. In the present case, manifest weight is dispositive.
 {¶ 16} R.C. 2903.11(A)(2), governing felonious assault, provides: "(A) No person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 17} "Knowingly" is defined in R.C. 2901.22(B) as follows:
 {¶ 18} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a *Page 7 
certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 19} In State v. Peavy, Cuyahoga App. No. 80480, 2002-Ohio-5607, this court explained the law as it relates to the role of an aider or abettor and what must be proven by the State to establish that a defendant did, in fact, aid or abet another in the commission of a crime:
 {¶ 20} "Aiding and abetting contains two basic elements: an act on the part of the defendant contributing to the execution of a crime and the intent to aid in its commission. Both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity. Mere presence during the commission of a crime, however, does not necessarily amount to being an accomplice. Indeed, `[m]ere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act.' Being present during the commission of a crime, absent some preceding connection with the transaction or conspiracy is not aiding or abetting." Id. at ¶ 32, quoting State v. Sims (1983), 10 Ohio App.3d 56,59. (Other citations omitted.)
 {¶ 21} Appellant argues that the evidence failed to establish that he "knowingly" aided in the commission of the crime. In support of his argument, appellant cites such things as the fact that he took April's side and urged Groce to return her possessions to her; he was not present when April displayed the knife *Page 8 
and, therefore, was unaware of the escalating nature of the argument; and testimony by April and Alberta that they were surprised that Groce fired the gun. In rendering its decision, the trial court considered these facts cited by appellant, and after considering them, stated:
 {¶ 22} "On the other hand, after knowing that the conflict hadn't abated once [Groce] told you to [get his gun], you proceeded to leave the immediate area of conflict and search for a hidden firearm that was loaded. Clearly * * * you knew what [Groce] wanted, and you knew the general area where to retrieve it.
 {¶ 23} "Upon locating the hidden firearm you returned to the ongoing conflict or altercation and delivered that loaded firearm to [Groce], despite the physical efforts of [the] Jones' * * * to stop you.
 {¶ 24} "Once in possession of that firearm, a firearm you delivered, Mr. Groce immediately shot at Ms. Jones striking her five times, causing her serious physical harm.
 {¶ 25} "* * *
 {¶ 26} "When you voluntarily decided to retrieve that loaded gun, and despite the efforts of [the] Jones' sisters to stop you, [you] delivered that firearm to [Groce], it was at this moment in time you became an aider and abetor (sic) in this crime. Your [un]controverted action in retrieving and delivering the loaded firearm is so significant, so demonstrative of your intent and so outweighs your other actions before and after this event, that I am convinced beyond a reasonable doubt that you *Page 9 
did as [an] aider and abetter knowingly cause or attempt to cause physical harm to Ms. April Jones."
 {¶ 27} Upon review, we do not find this to be "the exceptional case in which the evidence weighs heavily against the conviction," and in which the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." We agree with the trial court that, although appellant was not antagonistic toward April or Alberta and, in fact, had tried to help them, he became an aider and abettor when he retrieved the gun and gave it to appellant in what was an obviously heated situation. Accordingly, the weight of the evidence supports the conviction and appellant's two assignments of error are overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 10 
FRANK D. CELEBREZZE, JR., A.J., and PATRICIA A. BLACKMON, J., CONCUR.
[1] Count five of the indictment pertained to appellant's co-defendant.
[2] The record is not clear exactly when appellant returned to the scene in relation to Groce's "hollering." *Page 1